ATTORNEY GENERAL v. LEWIS.

1. SCHOOLS — COUNTY COMMISSIONER — ELIGIBILITY — STATUTE — AMENDMENT—EFFECT.

Section 3, Act No. 147, Pub. Acts 1891, provided that persons should be eligible to the office of county commissioner of schools who had held such office "under this act." The act was amended in 1895 (Act No. 66) in several particulars, and by the amended act it was provided that "persons who have held the office of commissioner of schools under the provisions of act number one hundred forty-seven, public acts of eighteen hundred ninety-one, shall be eligible." *Held*, that persons elected to the office of commissioner, and holding the same after the amendment of 1895, are eligible, since the statute is still the act of 1891 notwithstanding its amendments.

2. STATUTES—CONSTRUCTION—AMENDMENTS.

For the purpose of construction, a statute and its amendments are to be treated as one act, and of two constructions equally warranted by the language of an amendment, that is to be preferred which best harmonizes the same with the general tenor and spirit of the act amended.

Quo warranto proceedings by John E. Bird, attorney general, against Sim J. Lewis to try the title to the office of school commissioner of Otsego county. Submitted

January 7, 1908. (Docket No. 165.) Judgment for respondent January 31, 1908.

*John E. Bird,* Attorney General, and *Thomas Ambrose Lawler,* Assistant Attorney General, for relator.

*W. L. Townsend,* for respondent.

HOOKER, J. In April, 1907, the respondent was a candidate for the office of commissioner of schools for Otsego county, which contains less than 50 school districts. He received a majority of all votes cast, and a certificate of election, whereupon he filed his oath of office. He had held a similar office in Oscoda county continuously from July 1, 1899, to November 1, 1905, and had had experience as a teacher in public schools. On April 1, 1907, he held a first-grade certificate issued by the Oscoda county board, which had been indorsed and countersigned by the superintendent of public instruction, but he did not hold a teacher's certificate granted by the board of examiners of Otsego county. He had never held the office of commissioner of schools prior to July 1, 1899, and was not the holder of a State teacher's certificate, nor a graduate of the literary department of any such college, university, or school, as is referred to in section 4810, 2 Comp. Laws.

On July 1, 1907, respondent demanded the books, papers, etc., belonging to said office of Bailey, who had theretofore been commissioner of schools of said county, who, acting under the advice of the superintendent of public instruction, refused to give up the office or the property belonging to it. Respondent afterwards obtained them through proceedings in the probate court, under 3 Comp. Laws, chap. 272.

This proceeding was instituted in this court to oust respondent from said office. The only question before us is whether respondent possesses the statutory qualifications for the office. The office in question is a statutory office

and certain statutory qualifications are requisite to eligibility, 2 Comp. Laws, § 4810.

" Persons eligible to hold the office of commissioner of schools must possess, besides an experience of twelve months as teacher in the public schools of the State, one of the following qualifications: Must be a graduate of the literary department of some reputable college, university or State normal school, having a course of at least three years, or hold a State teacher's certificate, or be the holder of a first-grade certificate, but said first-grade certificate shall only qualify the holder thereof to hold the office of commissioner in the county where such certificate was granted: *Provided*, That persons who have held the office of commissioner of schools under the provisions of act number one hundred forty-seven, public acts of eighteen hundred ninety-one, shall be eligible. In counties having less than fifty districts subject to the supervision of the county commissioner, a person holding at the time of his or her election a second-grade certificate shall be eligible."

Counsel for respondent bases his claim of eligibility on three grounds:

1. A first-grade certificate which makes him eligible in any county where it was in force, although issued in a county other than that in which he was elected.

2. Having previous to election to the office in dispute held the office of commissioner of schools (in another county) under Act No. 147, Pub. Acts 1891.

3. A first-grade certificate indorsed by the superintendent of public instruction in force in the county of his election, said county having less than fifty school districts.

The statute above quoted is section 3 of Act No. 66, Pub. Acts 1895, amendatory of Act No. 147, Pub. Acts 1891. The section before amendment provided that persons should be eligible to the office of commissioner " who have held the office of county commissioner under this act," and the attorney general claims that the requirements under which respondent was elected were, by reason of the amendment, greater than those required by the act of 1891. Our opinion is that the original act indicates an intention to provide that, once elected, a man

was to be• always eligible under the act, and that the same intent is shown by the amendment. The change of language can be accounted for by this intention, coupled with a fear that the retention of the words "this act" would be construed to show an intention to limit eligibility to such as should have held office under the amendatory act. It probably would not have had that effect, as we would have been justified in saying that the language had reference to the original act as amended, i. e., Act No. 147, Pub. Acts 1891. This is the act under which all of these elections have been had, notwithstanding the fact that some changes have been made by amendment. It is still the act of 1891 where we must look for the title and for the substratum of the provisions on the subject.

For the purposes of construction both acts are to be treated as one, and " of two constructions *equally warranted* by the language of an amendment, that is to be preferred which best harmonizes the same with· the general tenor and spirit of the act amended." Endlich on Interpretation of Statutes, §§ 40, 44, 294. In our judgment it was the intention of the legislature to continue the provision in the law of 1891 making the holding of the office, whether before or after the amendment, a sufficient qualification.

We do not question the propriety of a different construction in cases where a contrary intent is manifest, or where, as in *Hatch* v. *Calhoun Circuit Judge*, 127 Mich. 175, a penal case, the construction contended for appears to make the two acts repugnant or inconsistent.

As this point is conclusive of the controversy, discussion of other grounds relied on by respondent is unnecessary. The respondent has established his right to the office and will take judgment accordingly.

BLAIR, OSTRANDER, MOORE, and McALVAY, JJ., concurred.