PEOPLE v TRONCOSO

Docket No. 115976. Submitted December 10, 1990, at Detroit. Decided
     March 4, 1991, at 9:05 A.M. Leave to appeal denied, 437 Mich —.

José Troncoso pleaded guilty in the Recorder's Court for the City
     of Detroit of possession with intent to deliver 50 to 225 grams
     of cocaine and was sentenced to two to twenty years' imprison-
     ment, Dominick R. Carnovale. The prosecutor appealed, alleg-
     ing that the court failed to articulate on the record substantial
     and compelling reasons to justify a departure from the pre-
     sumptive five-year minimum sentence for the offense.

     The Court of Appeals *held:*

     The court did not abuse its discretion in sentencing the
defendant.

     1. A sentencing judge does not possess unfettered discretion
to depart from the presumptive minimums, however, discretion
exists in appropriate cases. The articulated reasons for devia-
tion need not necessarily be objective and verifiable so long as
they are substantial and compelling.

     2. Substantial and compelling reasons were articulated on
the record to justify a departure from the presumptive mini-
mum term. These included the defendant's minimal or nonexis-
tent prior criminal record, very steady work record, substantial
family support, and motivation and desire to live a law-abiding
life in the future. The sentence is proportionate to the serious-
ness of the circumstances surrounding the offense and to the
offender.

     Affirmed.

     McDONALD, P.J., dissenting, stated that substantial and com-
pelling reasons for departure from mandatory minimum sen-
tences should be confined to those that are objective and
verifiable. Although a sentencing court's consideration of ac-
tions or incidents occurring after a defendant's arrest should

REFERENCES

Am Jur 2d, Criminal Law §§ 598, 599; Drugs, Narcotics, and Poi-
     sons § 48.
See the Index to Annotations under Drugs and Narcotics; Mitiga-
     tion or Aggravation of Punishment.

not be precluded, such actions or occurrences must be external to the minds of the judge, the defendant, and others involved in making the decision to be considered proper factors for departure. Although the factors given by the trial court for departure in this case are both subjective and objective, none constitute substantial and compelling reasons to justify reduction of the mandatory minimum sentence. The case should be remanded for resentencing.

SENTENCES — PRESUMPTIVE MINIMUM SENTENCES — DEPARTURE FROM STATUTORY MINIMUM.

A sentencing court may depart from presumptive minimum sentences in appropriate cases; the articulated reasons for the deviation need not necessarily be objective and verifiable so long as they are substantial and compelling.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *George E. Ward,* Chief Assistant Prosecutor, for the people.

*Mark H. Magidson,* for the defendant.

Before: McDONALD, P.J., and MICHAEL J. KELLY and GRIFFIN, JJ.

GRIFFIN, J. The people appeal[1] a sentence of two to twenty years imposed upon the defendant for a plea-based conviction of possession with intent to deliver 50 to 225 grams of cocaine, MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii). The prosecutor argues that Recorder's Court Judge Dominick R. Carnovale failed to articulate on the record "substantial and compelling reasons" to justify a departure from the presumptive five-year minimum sentence for the offense. We disagree and affirm.

I

In 1987-88, the Legislature sought to moderate

---

[1] Although defendant filed a cross appeal, he has not filed a brief. Accordingly, we deem the cross appeal to be abandoned.

our previously rigid and uncompromising drug laws by granting sentencing judges discretion to depart from certain presumptive minimum terms if the sentencing courts find on the record "there are substantial and compelling reasons to do so." The Senate Analysis of the bill package indicates that the Legislature intended to give the sentencing judges "greater flexibility in making sentencing decisions based on the individual circumstances of a case":

> Also, by allowing judges to depart from the minimum terms, and reducing the minimum for larger quantities, the bill would moderate what has been an uncompromising law and would give judges greater flexibility in making sentencing decisions based on the individual circumstances of a case. [Senate Fiscal Agency, SB 598, 600, 603, 610: Third Analysis, August 29, 1988.]

Further legislative history[2] may be found in 68 Mich B J 1179 (1989) in the form of an "Opinion and Dissent" letter written by David Cahill, Legal Counsel for the House Judiciary Committee. Therein, Cahill tracks the emergence of the words "substantial and compelling" in the statute and states that the phrase was intentionally undefined "so that the trial bench would have the tools available to do justice in individual circumstances":

> To the Editor:
> George Ward's article in the October *Bar Jour-*

---

[2] We recognize that such postenactment statements of legislative intent are of questionable value. See generally *Bd of Ed of Presque Isle Twp School Dist No 8 v Presque Isle Co Bd of Ed*, 364 Mich 605; 111 NW2d 853 (1961). Nevertheless, we include the Cahill letter because we are convinced that it accurately and concisely rebuts the misstatements of legislative history contained in Ward, *Drug Sentences: Reining in Knight-Errantry*, 68 Mich B J 976 (1989).

*nal* entitled "Drug Sentences: Reining in Knight-Errantry" is an inaccurate report on the legislative history of the two public acts (1987 PA 275 and 1988 PA 47) which allow a judge not to impose certain mandatory minimum drug sentences if the judge finds that there are "substantial and compelling reasons to do so."

The case of *People v Diamond*, 144 Mich App 787 [376 NW2d 192 (1985)], lv den 424 Mich 894 (1986), was not considered by the Legislature when these public acts were drafted. Furthermore, Michigan does not have a "presumptive sentencing" system. Therefore, any use of the words "substantial and compelling" as a term of art in such a system, in Minnesota or elsewhere, is irrelevant to the interpretation of Michigan statutes which are not part of such a system. Finally, the lengthy list of sentencing factors which Mr. Ward believes should not be "substantial and compelling reasons" was never presented to or considered by the Michigan Legislature.

Instead, the "substantial and compelling reasons" departure language originated with a bill about seat belts.

House bill 4343 of the 1987-88 legislative session contained language which would have required a judge to impose a certain minimum fine for a seat belt violation unless the judge "makes a finding on the record or in writing that, under the circumstances surrounding the infraction, the imposition of the full amount of the fine and costs or of any fine and costs would be unjust." HB 4343 did not make it into law, but the idea of a mandatory minimum, coupled with a "departure" so that the judge could avoid an individual injustice, had been planted in the minds of several legislators.

In the summer of 1987, the Speaker of the House and the Senate Majority Leader directed Representative Perry Bullard and Senator Jack Welborn to prepare a package of anti-crime legislation. Some prosecutors and judges had told these legislators that the drug sentencing system in effect at that time, with its totally inflexible "man-

datory minimum" scheme, delayed the resolution of many cases and occasionally produced unjust results. Therefore, these two legislators agreed to propose the "substantial and compelling reasons" downward departure mechanism so that the trial bench would have the tools available to do justice in individual circumstances.

The "substantial and compelling" phrase itself was taken from a series of bills on sentencing guidelines which also did not become law.

The two public acts in question, creating the "substantial and compelling" departure in drug cases, then became law as Representative Bullard and Senator Welborn had proposed.

As neither "substantial" nor "compelling" are defined, the words have their ordinary meanings.

/s/ David Cahill, Legal Counsel House Judiciary Committee

[68 Mich B J 1179 (1989).]


II


Despite such history, a panel of this Court in *People v Downey,* 183 Mich App 405; 454 NW2d 235 (1990), severely restricted the discretion of sentencing judges to deviate from the presumptive minimums. Obviously influenced by Chief Assistant Prosecutor Ward's article *Drug Sentences: Reining in Knight-Errantry,* 68 Mich B J 976 (1989), this Court created standards and hurdles which were never contemplated by the Legislature. In particular, the *Downey* Court invented an "objective/subjective" dichotomy to serve as a litmus test of whether a particular reason will prove to be "substantial and compelling." The test created by the *Downey* panel is as follows:

We should, however, state that the term "substantial and compelling" *implies that the factor*

*must be capable of verification and thus is an
objective standard as opposed to a subjective one.*
[*Id.* at 415. Emphasis added.]

Additionally, *Downey* established a line of de-
marcation between prearrest and postarrest con-
duct:

[A] defendant's protestations of remorse and his
actions after his arrest which are relied upon to
show his remorse and rehabilitative potential are
much more subjective and thus would not, absent
other exceptional circumstances, be appropriate
factors to consider. [*Id.* at 415-416.]

Later in *People v Krause,* 185 Mich App 353,
358; 460 NW2d 900 (1990), this Court rejected
*Downey's* prearrest-conduct limitation:

[W]e disagree with the *Downey* panel's conclu-
sion that, because an action is taken or an inci-
dent occurs after a defendant's arrest, such action
or incident becomes subjective.

The majority in *Krause,* however, affirmed the
remainder of the *Downey* test, including its re-
quirements that the "substantial and compelling"
reasons be "objective and verifiable." Also see
*People v Clark,* 185 Mich App 127; 460 NW2d 246
(1990), and *People v Pearson,* 185 Mich App 773;
462 NW2d 839 (1990).

Finally, we are cognizant of a footnote in the
dissenting opinion in *People v Schultz,* 435 Mich
517, 546, n 19; 460 NW2d 505 (1990), in which
Justice BRICKLEY cites *Downey* with approval.

III

The primary goal of judicial construction of

statutes is to ascertain and give effect to the intent of the Legislature. *People v Hawkins,* 181 Mich App 393, 396; 448 NW2d 858 (1989). The role of the judiciary is to construe statutes as intended by the Legislature, not to rewrite them. *Lapeer Co Dep't of Social Services v Harris,* 182 Mich App 686, 689; 453 NW2d 272 (1990). Absent a statutory definition or controlling judicial definition, we must comply with the legislative directive to construe statutory language according to the "common and approved usage" of the words. MCL 8.3a; MSA 2.212(1);[3] *State ex rel Wayne Co Prosecuting Attorney v Levenburg,* 406 Mich 455, 465; 280 NW2d 810 (1979); *Fenton Area Public Schools v Sorensen-Gross Const Co,* 124 Mich App 631, 639; 335 NW2d 221 (1983). In doing so, resort to dictionary definitions is appropriate. *Id.*

The term "substantial" is defined in *Webster's Third New International Dictionary, Unabridged Edition* (1981) as

not seeming or imaginary: not illusive . . . being of moment: important, essential . . . considerable in amount, value, or worth . . . soundly based: carrying weight.

Similarly, *The Random House Dictionary of the English Language: Unabridged Edition* (1987) defines "substantial" as

of ample or considerable amount, quantity . . . basic or essential; fundamental . . . of real worth,

---

[3] MCL 8.3a; MSA 2.212(1) provides:

All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.

value, or effect . . . essential, material, or important.

According to *Random House,* the term "compelling" means "overpowering . . . having a powerful and irresistible effect." More to the point is *Webster's Third,* which defines "compelling" as

to urge irresistibly by moral or social pressure . . . to force by personal temperament or other subjective considerations[4] . . . to force or cause irresistibly . . . to exert an irresistible influence. [Emphasis added.]

In light of these definitions and the Legislature's expressed intent to expand sentencing discretion, we cannot subscribe to the *Downey* restrictions which limit the sentencing court's consideration to prearrest factors capable of objective verification. The terms used by the Legislature plainly contemplate a broader scope of relevant criteria. The prosecutor's argument that "substantial and compelling" reasons *should* be limited to a defendant's objective and verifiable prearrest conduct is a public policy argument which is more appropriately addressed to the Legislature. This is particularly true with regard to penal statutes which are to be strictly construed. *People v Hall,* 391 Mich 175, 189-190; 215 NW2d 166 (1974). The litmus test invented by the *Downey* panel is a creative construction of a penal statute which is unsupported by any legislative history and not evident from a fair reading of the words used by the Legislature.

We note that the *Downey* test is reminiscent of the discarded no-fault automobile tort threshold

---

[4] The *Downey* Court either overlooked or ignored this section of the definition which is included in both the 1966 and 1981 editions of *Webster's Third New International Dictionary, Unabridged Edition.* See *Downey, supra* at 410.

standard of an "objectively manifested" injury created by *Cassidy v McGovern,* 415 Mich 483; 330 NW2d 22 (1982), and eliminated by *DiFranco v Pickard,* 427 Mich 32; 398 NW2d 896 (1986). In its former opinion, the Supreme Court held that for an injury to exceed the tort threshold of "serious impairment of body function," it was necessary for the injury to be "objectively manifested." The requirement was construed by our Court to mean that threshold injuries must be subject to "medical measurement." *Williams v Payne,* 131 Mich App 403, 409-410; 346 NW2d 564 (1984). Recovery was only allowed for such "verifiable" injuries. Mere subjective complaints unsupported by "objective" findings were deemed insufficient.

Shortly after their judicial promulgation, the "objective," "verifiable," and "medical measurement" standards of *Cassidy* and its progeny were discarded by the Supreme Court as "almost insurmountable obstacle[s]" not intended by the Legislature. *DiFranco, supra* at 66.

IV

In the instant case, Recorder's Court Judge Dominick R. Carnovale articulated on the record a number of factors which when taken together were deemed to constitute a substantial and compelling reason for departure. These factors included: (1) defendant's minimal or nonexistent prior record, (2) defendant's very steady work history, (3) defendant's substantial family support, and (4) defendant's motivation and desire to live a law-abiding life in the future:

I do believe that the facts and circumstances here do give rise to sufficient substantial and compelling reasons to allow me to exercise discre-

tion in somewhat lowering the mandatory minimum that the legislature has provided.

You still are a Cuban citizen; I recognize that. You've really had no contacts, taking that Florida question as a question mark. You're, at age 30, and since you've been here, staying with your fiancee. You've had no contacts in the State of Michigan. And while that in and of itself of course would not be a substantial and compelling reason, it is a consideration that I can take—it is a fact that I can take into consideration determining whether or not the whole picture indicates substantial and compelling reasons.

You do have a very steady work record. You do have a high regard of your employees. They've indicated that in letters which I have before me here this morning. And you have demonstrated on all other aspects a desire and a willingness to live a law abiding life, and have been, as far as we can tell, a law abiding citizen up to this offense here.

You have been living with your fiancee and supporting a family for the past several years. That is a—you've been noted as a good father. You've been noted as a very hard worker. And you've been noted as being very reliable with your family and with your employment. And those I think are substantial and compelling reasons which would allow me to—my subjective test, which would allow me to reduce the sentence.

*  *  *

It is a very serious offense. It is putting poison into the community. I do believe that there are substantial and compelling reasons which allow me to reduce your penalty in this particular situation, at least on the minimum end. The maximum end of course is set by the legislature and must remain.

It's the sentence of this Court you serve from two to twenty years in the State Prison for Southern Michigan, or such other place the Department of Corrections may designate.

If one disregards *Downey's* "objective/subjec-

tive" dichotomy, this combination of factors would be deemed to be "substantial and compelling" under our former decision:

> [W]e believe that the factors which go into determining the rehabilitative potential of the defendant may be considered when determining if substantial and compelling reasons exist to deviate from the presumptive sentence.
>
> We agree with the prosecutor that race and economic status are not factors which should be considered. *People v Coles,* 417 Mich 523, 546; 339 NW2d 440 (1983). A nonexhaustive list of factors which may be considered under subsection 7401(4) are: (1) the facts of the crime which mitigate defendant's culpability (see for example the factors listed in Minnesota's and Washington's statutes), (2) defendant's prior record, (3) defendant's age, and (4) defendant's work history. [*Downey, supra* at 414-415.]

We adopt and affirm this *non*exhaustive list of factors but reject *Downey's* objective, verifiable, and prearrest-conduct limitations. While we agree that the sentencing judge does not possess "unfettered discretion" to depart from the presumptive minimums, discretion nevertheless exists in appropriate cases. We hold that the articulated reasons for deviation need not necessarily be "objective" and "verifiable" so long as they are "substantial and compelling." The parameters of the limited judicial discretion afforded by the statute will become more clearly defined through our case by case review.

V

We have long recognized that sentencing is not a function of the appellate courts. *People v Coles,* 417 Mich 523, 536-538; 339 NW2d 440 (1983).

Rather, sentencing rests exclusively within the province of the sentencing judge who, after having seen and heard the defendant, is uniquely positioned to evaluate the defendant's credibility, character, and rehabilitation potential. *Id.* A "subjective" evaluation of such traits is often necessary for effective sentencing. In this regard, we have recognized

> the firmly entrenched concept that punishment be left to the trial court's discretion. Such discretion is intricately intertwined with the principles underlying the individualizing of sentences embodied in Michigan case law. [*People v Howell,* 168 Mich App 227, 232; 423 NW2d 629 (1988).]

In sentencing matters, we should not substitute our judgment for that of the sentencing judge absent an abuse of discretion. *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990).[5] We recognize

---

[5] In *Milbourn,* the Supreme Court affirmed the abuse-of-discretion standard of review. The test, however, was changed from "shocks the conscience of the appellate court" to "the principle of proportionality." Although the Court criticized and discarded the shocks-the-conscience test as being "one of complete subjectivity" and therefore no rule at all, it also recognized that a measure of subjectivity is unavoidable for individualized sentencing:

> While a measure of subjectivity in judicial decisions is unavoidable due to the differing personal backgrounds, experiences, and viewpoints of different members of the bench, a standard which is itself "one of complete subjectivity" has no more place on the appellate bench than in the trial court. A rule which contains no directives to the judges who must apply it—other than to encourage the rendering of decisions in accordance with personal value judgments—is a "rule" only in the weakest sense. [*Milbourn, supra* at 645.]

Further, the Court did not characterize "the principle of proportionality" test as completely objective, but rather *less subjective* than the former rule:

> [T]he proportionality standard is preferable because it is far less subjective than the "shock the conscience" inquiry. [*Id.* at 636.]

that the "[sentencing] process entails the need for
a certain amount of factfinding which is best dis-
charged by the trial court." *People v Coles, supra*
at 537. Further, "[a]ppellate courts were not estab-
lished to engage in any significant factfinding
functions, and, were they to resentence a defen-
dant, such a function would become necessary, lest
they have only a skeletal picture from which to
determine the propriety of a given sentence." *Id.*

We find no abuse of discretion in the instant
case. Substantial and compelling reasons were
articulated on the record to justify a departure
from the presumptive minimum term. Further,
the sentence of two to twenty years is proportion-
ate to the seriousness of the circumstances sur-
rounding the offense and to the offender.

Affirmed.

MICHAEL J. KELLY, J., concurred.

MCDONALD, P.J. *(dissenting)*. I respectfully dis-
sent and would remand for resentencing.

Unlike the majority, I agree with this Court's
opinion in *People v Krause,* 185 Mich App 353;
460 NW2d 900 (1990), and believe substantial and
compelling reasons for departure from mandatory
minimum sentences should be confined to those
that are objective and verifiable. Although I would
not go so far as to preclude a sentencing court's
consideration of actions or incidents occurring af-
ter a defendant's arrest, contra, *People v Downey,*
183 Mich App 405; 454 NW2d 235 (1990), I do
agree such actions or occurrences must be external
to the minds of the judge, defendant, and others
involved in making the decision to be considered
proper factors for departure.

As indicated in *Downey,* the trial court must
begin its analysis from the perspective that the

Legislature has declared the mandatory minimum sentence to be an appropriate sentence. Thus, any departure therefrom must be supported by reasons which clearly show why the sentence is inappropriate for the defendant.

If we allow subjective factors, incapable of independent verification, to be considered sufficient reasons for departure, appellate courts will once again be left with an ambiguous standard of sentence review reminiscent of the "shock the conscious" standard, recently abandoned by our Supreme Court in *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990).

Although in the instant case the factors given by the trial court for departure are both subjective and objective, none constitute substantial and compelling reasons to justify reduction of the mandatory minimum sentence.

The trial court cites defendant's lack of a prior record as the first objective factor justifying departure. If the Legislature intended a first offender to be exempt from the mandatory minimum sentence, such an exception could have easily been stated. Even the trial court recognized that such a factor "in and of itself of course could not be a substantial and compelling reason" to depart.

The trial court next cites defendant's "very steady work record." Although another objective factor, I do not believe it constitutes a compelling reason for a downward departure from the mandatory minimum sentence. Most persons would agree one of the main reasons the Legislature enacted mandatory sentencing for drug convictions is to deter otherwise law-abiding citizens from being tempted to supplement their incomes by engaging in illicit drug sales. Thus, an employed person with no prior record, such as defendant, is the type

of person the Legislature intended to discourage from participating in drug trafficking.

Finally, as additional reasons for the reduced sentence, the trial court cites defendant's substantial family support and his motivation and desire to live a law-abiding life. These subjective factors fall far short of being substantial and compelling reasons to ignore a mandatory minimum sentence. Defendant's substantial family support is a credit to his family, not the defendant. Additionally, defendant's expressed desire to live a law-abiding life is a common subject of allocution. Few defendants fail to confess the error of their ways and promise better conduct if shown leniency at sentencing. Most men and women of the cloth would marvel at a trial judge's average conversion rate. Although a person's desire to lead a law-abiding life is a goal of our criminal justice system, such a factor should not be considered a substantial and compelling reason for departure where independent verification at sentencing is nearly impossible. I would remand for resentencing.