PEOPLE v WINDALL HILL

Docket No. 139790. Submitted September 24, 1991, at Lansing. De-
cided November 22, 1991, at 9:00 A.M. Leave to appeal denied,
439 Mich 917.

Windall D. Hill pleaded guilty in the Oakland Circuit Court,
Norman L. Lippit, J., of delivery of more than 50 but less than
225 grams of a mixture containing cocaine. The court, Barry L.
Howard, J., ultimately sentenced the defendant to a term of
one to twenty years in prison, after having found that the
defendant's strong family unit, absence of a prior criminal
record, and remorse following his arrest provided the necessary
substantial and compelling reasons needed to depart from the
statutorily mandated five-year minimum sentence. The prose-
cutor appealed, arguing that the reasons for the departure from
the mandatory minimum sentence were not substantial and
compelling and that the defendant should be resentenced to the
presumptive minimum term. The Court of Appeals, SHEPHERD,
P.J., and GILLIS and CAVANAGH, JJ., affirmed in an unpublished
opinion per curiam, decided April 5, 1991 (Docket No. 126060),
holding that the cited reasons for departure all indicated a
strong rehabilitation potential and constituted substantial and
compelling reasons for the departure from the minimum sen-
tence. However, Judges GILLIS and SHEPHERD concurred be-
cause they felt that they were required to do so under Adminis-
trative Order No. 1990-6, 436 Mich lxxxiv (1990). The Court of
Appeals granted the prosecutor's request to convene a special
panel to rehear the case to resolve the question "[w]hether
substantial and compelling reasons justifying departure from
mandatory sentences, pursuant to MCL 333.7401(4); MSA
14.15(7401)(4), are limited to objective and verifiable prearrest
factors, as held in *People v Downey,* 183 Mich App 405; 454
NW2d 235 (1990), or whether a court has greater discretion to
depart from mandatory minimum sentences, as held in *People
v Troncoso,* 187 Mich App 567; 468 NW2d 287 (1991)." 190
Mich App 322 (1991).

In an opinion by Judge SHEPHERD joined by Judges HOOD,
GRIBBS, SAWYER, MCDONALD, DOCTOROFF, and MARILYN KELLY
the Court of Appeals *held:*

The standard to be used to determine whether there are

substantial and compelling reasons for departing from the mandatory minimum sentence in controlled substances cases is that set forth in *People v Downey,* as limited by *People v Krause,* 185 Mich App 353; 460 NW2d 900 (1990). Trial courts may depart from the mandatory minimum sentence for substantial and compelling reasons that are objective and verifiable and are permitted to consider both pre- and postarrest factors in determining whether to depart from the mandatory minimum sentence. Consideration of postarrest factors should be undertaken with much greater caution than consideration of prearrest factors, however, because of the risk that defendants will create postarrest events to influence the sentencing judge.

Remanded for resentencing.

Judge GRIFFIN joined by Chief Judge DANHOF and Judge WEAVER dissenting, stated that the Legislature, by its use of the phrase "substantial and compelling" did not intend that a sentencing judge be limited to consideration of objective and verifiable factors when determining whether to depart from certain presumptive minimum terms, and that there were substantial and compelling reasons for the departure in this case. The majority has rewritten the statute and created a test never contemplated by the Legislature. Further, a remand is unnecessary because all relevant facts and factors are known. Judge GRIFFIN also separately dissented on the ground that the Court is without authority to vacate defendant's sentence and to remand for resentencing when the majority has not ruled the sentence to be invalid.

Judge MURPHY joined by Judges MICHAEL J. KELLY and JANSEN, dissenting, agreed with Judge GRIFFIN that the Legislature did not intend, by its use of the phrase "substantial and compelling," to limit a sentencing judge's consideration only to factors that are objective and verifiable and that the reasons relied upon by the sentencing judge in this case were substantial and compelling.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Michael J. Modelski,* Chief, Appellate Division, and *Robert C. Williams,* Assistant Prosecuting Attorney, for the people.

*Kevin M. Check,* for the defendant.

Amicus Curiae:

*John D. O'Hair,* Prosecuting Attorney, and *George E. Ward,* Chief Assistant Prosecutor, for the Wayne County Prosecutor.

*Sherrie P. Guess* and *Laura K. Vickers,* for Criminal Defense Attorneys of Michigan.

Before: DANHOF, C.J., and MICHAEL J. KELLY, HOOD, GRIBBS, SHEPHERD, SAWYER, WEAVER, MC-DONALD, DOCTOROFF, MURPHY, GRIFFIN, MARILYN KELLY, and JANSEN, JJ.

SHEPHERD, J. This appeal presents the first opportunity for this Court to employ the special panel conflict resolution provisions of Administrative Order No. 1990-6, 436 Mich lxxxiv (1990). On July 15, 1991, we granted the petition of the Oakland County Prosecutor to convene a special panel of this Court:

> The Court orders that the petition to convene a special panel pursuant to Administrative Order No. 1990-6 is granted and the prior opinion in docket No. 126060 is vacated.

The question in conflict to be resolved is:

> Whether substantial and compelling reasons justifying departure from mandatory minimum sentences, pursuant to MCL 333.7401(4); MSA 14.15(7401)(4), are limited to objective and verifiable prearrest factors, as held in *People v Downey,* 183 Mich App 405; 454 NW2d 235 (1990)[1], or whether a court has greater discretion to depart from mandatory minimum sentences, as held in

---

[1] Leave denied 436 Mich 871 (1990) (CAVANAGH and ARCHER, JJ., would have granted leave to appeal).

*People v Troncoso,* 187 Mich App 567; 468 NW2d 287 (1991).[2] [190 Mich App 322 (1991).]

We resolve the conflict in favor of a position that combines the holdings in *People v Downey* and *People v Krause,* 185 Mich App 353; 460 NW2d 900 (1990). The effect of this holding is that trial courts may depart from mandatory minimum sentences for substantial and compelling reasons that are objective and verifiable. Trial courts will be permitted to consider both prearrest and postarrest factors in determining whether to depart from the mandatory minimum sentences. In the present case we remand for resentencing under the principles announced herein.

I

On July 18, 1988, defendant Windall Davenshire Hill sold three ounces of cocaine to an undercover narcotics officer. As a result, Hill was immediately arrested and charged with delivery of more than 50 but less than 225 grams of a mixture containing cocaine. MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2) (a)(iii). At the time, the presumptive minimum sentence for the offense was five years in prison. However, pursuant to MCL 333.7401(4); MSA 14.15(7401)(4), the sentencing judge was free to impose a lesser sentence "if the court finds on the record that there are substantial and compelling reasons to do so."

Unable to post bond, defendant remained incarcerated in the Oakland County jail until November 7, 1988. On that date, defendant Hill appeared before Oakland Circuit Judge Norman L. Lippitt and pleaded guilty to the charge. Following the

---

[2] Leave denied 437 Mich 951 (1991) (BRICKLEY and BOYLE, JJ., would have granted leave to appeal).

acceptance of the plea, a sentencing hearing was immediately held. According to the presentence report, defendant is a nineteen-year-old high-school graduate who resides with his parents. He is described by the probation officer as "the product of an intact, stable home environment." Defendant has no prior criminal record, either as an adult or as a juvenile. His father, Winston Hill, is employed as a hi-lo driver for Ford Motor Company. His mother, Fannie Hill, is a college graduate who teaches elementary school in Detroit. Neither parent has a criminal record. The report further states that defendant's parents "do not want to see their son go to prison, and would do anything in their power to assure that he, if placed on probation, would successfully complete it."

At the sentencing hearing, defense counsel emphasized all these factors to the court. In addition, defense counsel pointed out that there were no weapons involved in the offense, that the amount of cocaine (75.86 grams) marginally exceeded the fifty-gram threshold, and that defendant was not a typical "hard core" drug dealer. Defendant's father also addressed the court and explained how he, as a parent, would guide defendant's behavior should defendant avoid incarceration.

In view of these facts, the court deemed it appropriate to give defendant one year to "straighten out." Accordingly, the court delayed sentencing for eleven months, until October 2, 1989, and imposed several conditions on defendant. Apparently the delayed sentencing procedure adopted by the trial court is not permitted by law. The delayed sentencing statute applies only to probationable offenses, MCL 771.1(1); MSA 28.1131(1). The present offense is not a probationable offense. MCL 333.7401(3); MSA 14.15(7401)(3).

Notwithstanding the impropriety of the sentence, the prosecutor made no attempt to seek leave to appeal from the delayed sentence and permitted defendant to attempt to comply with the court's conditions.

Defendant was ordered to maintain full-time employment, pay $300 in court costs at the rate of $30 a month, and "comply with all other conditions of the probation department," including periodic urinalysis. Judge Lippitt made it clear that defendant would receive a five- to twenty-year prison term if he failed to comply.

On October 23, 1989, defendant Hill appeared for delayed sentencing before Judge Barry L. Howard. Judge Howard had succeeded Judge Lippitt, who had retired. As the result of defendant's exemplary postarrest conduct, the updated presentence report contained a recommendation for imprisonment of only five to twenty months. The probation officer described defendant's rehabilitation as follows:

> Hill has responded favorably throughout the period of delay. He has complied with all conditions as specified on his delayed sentence order. Hill continues to maintain residency with his parents in Southfield. Since February 1989, Hill has held steady employment. He was employed at Montgomery Wards in Southfield until June 1989 working in the capacity of a tire/battery changer. For the next two months, Hill worked for the Borman Corporation as a stock person. On 9-6-89, Hill began employment at Treasure Foods Market in Detroit, earning $4 per hour, also employed in the stock department.
>
> A check with the Reimbursement Department indicates all monies have been paid in full. A LEIN check dated 8-30-89 reveals no subsequent arrests or outstanding warrants.

After hearing arguments, Judge Howard sentenced defendant to one year in the county jail. Judge Howard found substantial and compelling reasons to depart from the presumptive five-year minimum term and justified the departure as follows:

> *The Court:* . . . In many of these cases I am torn, like most judges, by what the statute says and then I have to look at the individual. Further, in this case, this is a delayed sentence. It occurred in approximately November 1988, in which my predecessor, Judge Lippitt, implied that if this young man were to go straight, that there would be a deviation from the minimum of the sentence. I'm not sure that I would have done it. In fact, I probably would not have. However, I am going to be bound by my predecessor's word.
>
> I do find that there is [sic] a substantial and compelling reasons to go beyond the statutory minimum. I find that this man is a first offender. I note the probation report as to his family. He has a strong family unit. It does not appear anybody else has had a prior criminal record. He appears to have shown, at least in the year, remorse, although I'm not sure that should be figured in. However, I do not believe that probation is appropriate.
>
> It is the sentence of this Court that he serve one year in the Oakland County jail.

On November 8, 1989, the prosecutor filed a "motion to correct invalid sentence." The prosecutor argued that the sentence was invalid because it was not indeterminate. On January 8, 1990, defendant was resentenced to one to twenty years in prison. Once again, the court articulated its reasons for the departure:

> *The Court:* . . . The Court again in sentencing has looked at the transcript as my predecessor

Judge Lippitt put forth. If I had been there it may have been very different. However, I will honor Judge Lippitt's agreement. I find that there is [sic] substantial and compelling reasons for the age of Mr. Hill; he has never been convicted of any crime; he has no prior contacts with the court; there were no weapons involved; he comes from a religious family and a good family that have [sic] been very supportive of him and it appears from the facts and circumstances that he is atypical of a hard core drug dealer and for those reasons I will impose a one to twenty sentence.

The prosecutor appealed to this Court, arguing that the reasons for departure were not substantial and compelling and that defendant should be resentenced to the presumptive minimum term. In an unpublished opinion, a panel of this Court rejected the prosecutor's arguments and affirmed defendant's sentence:

In the present case, we agree that there were substantial and compelling reasons for departing from the mandatory minimum sentence and find no abuse of discretion. Although we are not convinced that there were any facts surrounding the crime which would mitigate defendant's culpability, we cannot ignore this defendant's individual characteristics. His age, the absence of a criminal record, his strong family support, and his conduct while awaiting sentencing all point to a strong rehabilitative potential. Defendant has demonstrated substantial and compelling reasons to justify a departure.

Judges GILLIS and SHEPHERD concur for the reason that they are required to do so under Administrative Order 1990-6, 436 Mich lxxxiv (1990). They prefer the rationale of *People v Downey,* 183 Mich App 405; 454 NW2d 235 (1990). They believe that whether judges should be given such wide discretion in departing from mandatory minimum sentences is more appropriately a matter that should

be addressed by the Legislature. [*People v Hill,* unpublished opinion per curiam of the Court of Appeals, decided April 5, 1991 (Docket No. 126060), p 2.]

II

The concurring paragraph in *People v Hill* by Judges GILLIS and SHEPHERD prompted us to grant the prosecutor's request to convene a special panel and rehear the case. By operation of Administrative Order No. 1990-6, the previous opinion in *Hill* has been vacated. Therefore, we must once again decide whether the trial court erred when it found substantial and compelling reasons to depart from the presumptive minimum sentence. To this end, we must first determine the scope of the phrase "substantial and compelling" as it appears in the relevant statute. This issue has been the subject of considerable dispute among the judges of this Court.

In *People v Downey,* 183 Mich App 405; 454 NW2d 235 (1990), this Court first addressed the scope of departure under subsection 7401(4). Noting that the Legislature had not defined what factors constitute "substantial and compelling reasons" for departure, the *Downey* panel looked to legislation in Minnesota and Washington for guidance. *Id.,* pp 410-412. Although the *Downey* panel found the lists of substantial and compelling reasons approved by Minnesota and Washington helpful, it declined to hold that they were the only appropriate factors to consider. Rather, the panel arrived at a nonexhaustive list of factors that could be considered substantial and compelling under subsection 7401(4). Those factors were identified as (1) the facts of the crime that mitigate the defendant's culpability, (2) the defendant's prior

record, (3) the defendant's age, and (4) the defendant's work history. *Id.,* pp 414-415.

Applying the plain and ordinary meaning of the statutory language, the *Downey* panel adopted an "objective and verifiable" test for determining if proffered reasons are "substantial and compelling." *Id.,* pp 415-417. In so doing, the *Downey* panel also specifically limited the sentencing court's discretion to consideration of the defendant's prearrest conduct. The *Downey* Court explained its interpretation of the Legislature's intent as follows:

> We should, however, state that the term "substantial and compelling" implies that the factor must be capable of verification and thus is an objective standard as opposed to a subjective one. For example, a defendant's prior criminal record is readily verifiable and objective. On the other hand, a defendant's protestations of remorse and his actions after his arrest which are relied upon to show his remorse and rehabilitative potential are much more subjective and thus would not, absent other exceptional circumstances, be appropriate factors to consider.
>
> We conclude that the Legislature intended to give trial courts discretion to depart from the presumptively mandatory sentences only in exceptional cases. The scope of a sentencing court's discretion is thus narrow, the factors used in departing must be objective and must be of such significance that the statutory sentence is clearly inappropriate to the offender. The trial court must keep in mind that the Legislature has declared that the mandatory minimum sentence is an appropriate sentence. The trial court must begin its analysis from that perspective. [*Id.,* pp 415-416.]

The *Downey* test was followed and applied by subsequent panels of this Court in *People v Clark,* 185 Mich App 127; 460 NW2d 246 (1990), and

*People v Pearson,* 185 Mich App 773; 462 NW2d 839 (1990). In addition, in *People v Krause, supra,* the majority approved *Downey's* objective and verifiable test. The *Krause* majority, however, expressly rejected *Downey's* prearrest conduct limitation:

We agree with *Downey* that the bases for determining departure must be objective and verifiable. *Id.,* pp 414, 415. This means that the facts to be considered by the judge in determining substantial and compelling reasons must be actions or occurrences which are external to the minds of the judge, defendant and others involved in making the decision and must be capable of being confirmed. However, we disagree with the *Downey* panel's conclusion that, because an action is taken or an incident occurs after a defendant's arrest, such action or incident becomes subjective. See *id.,* pp 415-416. The fact that a defendant expresses remorse, whether orally or in writing, is an objective action which can be confirmed. However, a defendant's intent when he expresses remorse is within his own mind and is, therefore, subjective. It cannot be confirmed by his own statement. Consequently, his mere protestation of remorse should not be considered as a balancing factor for determining substantial and compelling reasons to depart from the mandatory sentence.

On the other hand, a defendant's active involvement in volunteer work, or cooperation with the police after his arrest, are events which exist outside the minds of the persons involved in deciding the defendant's sentence and can be verified. Although a defendant's intent in engaging in these postarrest activities may very well be self-serving, such intent does not make the acts subjective in nature. We believe these activities, being objective and verifiable, may be considered by the judge in measuring a defendant's punishment. However, such consideration should be tempered by an awareness that postarrest actions by the defendant are often undertaken for the primary purpose of

influencing the sentencing judge. It is only when the sentencing court, upon an evaluation of all the objective, verifiable information, reaches the conclusion that the collective facts provide substantial and compelling reasons to depart from the mandatory sentence that it may, in the exercise of discretion, decide to do so. [*Id.,* pp 358-359.]

The dissenting opinion in *Krause* ultimately formed the basis for this Court's opinion in *People v Troncoso, supra.* The majority in *Troncoso,* much like the panel in *Downey,* consulted dictionary definitions in an effort to ascertain the common and approved usage of the terms "substantial" and "compelling." In addition, the *Troncoso* panel reviewed the legislative history of the statute in an effort to discern the legislative intent. After doing so, the *Troncoso* majority rejected the *Downey* test, concluding that neither the language of the statute nor its legislative history supported such a construction:

In light of these definitions and the Legislature's expressed intent to expand sentencing discretion, we cannot subscribe to the *Downey* restrictions which limit the sentencing court's consideration to prearrest factors capable of objective verification. The terms used by the Legislature plainly contemplate a broader scope of relevant criteria. The prosecutor's argument that "substantial and compelling" reasons *should* be limited to a defendant's objective and verifiable prearrest conduct is a public policy argument which is more appropriately addressed to the Legislature. This is particularly true with regard to penal statutes which are to be strictly construed. *People v Hall,* 391 Mich 175, 189-190; 215 NW2d 166 (1974). The litmus test invented by the *Downey* panel is a creative construction of a penal statute which is unsupported by any legislative history and not evident from a fair reading of the words used by the Legislature.

\*    \*    \*

We adopt and affirm [*Downey's*] *non*exhaustive list of factors but reject *Downey's* objective, verifiable, and prearrest-conduct limitations. While we agree that the sentencing judge does not possess "unfettered discretion" to depart from the presumptive minimums, discretion nevertheless exists in appropriate cases. We hold that the articulated reasons for deviation need not necessarily be "objective" and "verifiable" so long as they are "substantial and compelling." The parameters of the limited judicial discretion afforded by the statute will become more clearly defined through our case by case review. [*Troncoso, supra,* pp 574, 577.]

### III

After thorough consideration of our previous decisions, we adopt and follow *Downey* as modified by *Krause* on the basis of our finding that the legislative intent in adopting the exception to mandatory minimum sentences requires a more restrictive field of discretion than allowed by *Troncoso.*

Some general observations regarding legislative intent are in order. The primary purpose of statutory construction is to discover and give effect to the intent of the Legislature. *State Treasurer v Wilson,* 423 Mich 138, 143; 377 NW2d 703 (1985). Where the statutory language is of doubtful meaning, a reasonable construction must be given, looking to the purpose of the act. *Id.,* p 144. The spirit and purpose of the statute should prevail over its strict letter. *Id.; Attorney General v American Way Life Ins Co,* 186 Mich App 679, 682-683; 465 NW2d 56 (1991).

A statute must be read in its entirety, and the meaning given to one section must be arrived at

only after due consideration of other sections so as to produce, if possible, an harmonious and consistent enactment as a whole. *State Treasurer v Wilson, supra,* 145. Thus, doubtful or ambiguous provisions are construed not in isolation but with reference to and in the context of related provisions, in order to give effect to the whole enactment. *Guitar v Bieniek,* 402 Mich 152, 158; 262 NW2d 9 (1978).

The Legislature will be presumed, under established rules of statutory construction, to have intended that its amendments of a statute be construed in connection with the other provisions of the statute and in harmony therewith. *Williams v Secretary of State,* 338 Mich 202, 207; 60 NW2d 910 (1953). And, where there are two equally plausible interpretations of an amendment, the one which best harmonizes the amendment with the general tenor and spirit of the act amended is to be preferred. *Attorney General v Lewis,* 151 Mich 81, 84; 114 NW 927 (1908).

With these generalities in mind, we hold that the approach that more closely follows the legislative scheme of mandatory sentences is that of *Downey* and *Krause,* i.e., the reasons for departure from the mandatory minimum sentence by imposing a lesser minimum sentence must be objective and verifiable. However, the trial court may consider postarrest facts, although consideration of postarrest facts should be undertaken with much greater caution than consideration of prearrest facts because of the risk that defendants will create postarrest events to influence the sentencing judge.

Any other interpretation of the statute is contrary to the obvious legislative intent of using harsh sentences to control the drug problem by

keeping drug dealers away from society for long and definite periods.

The House Legislative Analysis of the original mandatory sentencing scheme stated:

> The severe penalties imposed by the bill would have an important deterrent effect on illicit drug dealing. With the present drug penalties and parole possibilities, dealers feel that if caught they will spend little or no time in prison. The risk to them seems relatively small, and the potential for profit great. Consequently, only more severe penalties and the certainty of punishment will serve to deter would-be violators. The bill also contains an important exception to the mandatory prison sentence provisions by allowing a life probation option in the 50 to 224.99 gram offense category. This could be used as an incentive for lower-echelon drug dealers to give valuable information on major drug dealers.
>
> * * *
>
> The bill would ensure that persons convicted of drug dealing spend substantial periods of time in prison. By keeping drug dealers off the streets for longer periods of time, it will help reduce illicit drug activity. Further, it will help improve police morale. [House Legislative Analysis, HB 4190, May 17, 1978.]

We make no comment on whether the mandatory minimum sentencing scheme actually accomplishes these results. This language is merely quoted for the purpose of showing the point of view of those in the House who favored the mandatory minimum sentencing statutes.

Those in the House who were opposed to mandatory minimum sentences argued in the same document:

> The power to sentence should belong to judges;

the bill would, in effect, shift that power from judges to prosecutors. Sentencing judges must have unrestricted power to choose an appropriate sentence according to the condition of the defendant, the record of prior criminal activity, and the requirement of public protection. Discretion in sentencing is particularly important on drug offenses, because so many violators are victims of their own addiction and poverty. [*Id.*]

This latter point of view was obviously rejected when the mandatory minimum sentencing statutes were adopted.

Conversely, when the exception to the mandatory minimum sentencing statutes was enacted, the Senate Fiscal Agency reported that those supporting the legislation felt as follows:

Like Public Act 275, Senate Bill 598 would strengthen the controlled substances law by ensuring that anyone convicted of a possession offense involving 50 grams or more would face mandatory imprisonment. Offenders who had 25 to 49 grams would face either prison or lifetime probation, and those who had less than 25 grams would face a stiff fine and possible imprisonment. Also, by allowing judges to depart from the minimum terms, and reducing the minimum for larger quantities, the bill would moderate what has been an uncompromising law and would give judges greater flexibility in making sentencing decisions based on the individual circumstances of a case. Senate Bills 600, 603, and 610 would make the law consistent in regard to sentencing, pleas, and parole. [Senate Analysis, SB 598, 600, 603, 610, Third Analysis, August 29, 1988.]

The Senate Fiscal Agency added: "This analysis was prepared by nonpartisan Senate staff for use by the Senate in its deliberations and does not constitute an official statement of legislative in-

tent." Nevertheless, the quoted paragraph does represent the point of view of many of those supporting the amendments.

Regardless of whether the original mandatory minimum sentencing statutes and subsequent amendments have the desired results, we find that if trial judges can use factors that are both subjective and not verifiable, they would have freedom to depart from the mandatory minimum for almost any reason they choose to use and they would hold in their hands the power to defeat the legislative purpose at will, subject only to review for abuse of discretion and lack of proportionality under *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990), the same standards that apply to sentences that are not mandatory. If one wishes to argue that judges ought to have such greater discretion, the argument should be addressed to the Legislature and not to the appellate courts. The Legislature appears to have spoken in a manner that indicates that mandatory minimum sentences are required in order to rid society of the scourge of drugs and that exceptions to mandatory minimum sentences should be in only rare and exceptional cases where the original legislative purpose would not be defeated.

While it is true that the general sentencing scheme that exists in Michigan gives great discretion to trial judges, the mandatory minimum sentencing scheme is a radical departure from traditional sentencing practices. It was instituted for a specific purpose, and we find that the Legislature did not intend that the judges in their almost unlimited discretion could depart from the originally stated goal of the Legislature to use harsh and fixed mandatory minimum sentences as a means to control the drug problem.

The argument is made by defendant that our

holding strips trial judges of all discretion. That argument is without merit. The threshold decision that the trial judge must make is whether there are substantial and compelling reasons to depart from the mandatory minimum sentence by imposing a lesser minimum sentence. It is with respect to this threshold decision that the Legislature has evidenced its intent to limit to extreme cases departure from the statutory minimum sentence. However, once the trial court determines that there are substantial and compelling reasons to depart from the statutory minimum sentence, there are no limits in the statute of the factors that the trial judge may apply in deciding how far below the statutory minimum sentence the court should go. In such a case, all the standard considerations that exist in sentencing are at the disposal of the judges, and they are subject to review on the same basis as in any other case. Between the statutory mandatory minimum and whatever lesser minimum sentence the trial court imposes there lies adequate room for the exercise of sound judicial discretion. The mandatory minimum is a barrier; it is not a straight jacket.

IV

Turning to the case at hand, the trial judge did not have the benefit of the *Downey, Krause,* or even the *Troncoso* analysis. Nor, obviously, did he know of our holding today. Both *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983), and *Milbourn* have made it clear to us that the Court of Appeals should not impose sentences. It is the function of the trial court, acting under correct principles of law, to impose a sentence in the first instance.

We believe that the prosecutor should be afforded the opportunity to argue to the trial court

that under our holding there are no substantial and compelling reasons to depart from the mandatory five-year term. Similarly we believe defendant must be free to demonstrate under today's holding that such reasons do exist. Then, the parties would be able to argue the appropriate magnitude of the departure if the trial court decides there are substantial and compelling reasons to depart.

Remanded for resentencing. We do not retain jurisdiction.

Hood, Gribbs, Sawyer, McDonald, Doctoroff, and Marilyn Kelly, JJ., concurred.

Griffin, J. (dissenting). I respectfully dissent. I would apply People v Troncoso, 187 Mich App 567; 468 NW2d 287 (1991), and affirm defendant's sentence.

I

In 1987-1988, the Legislature sought to moderate our previously rigid and uncompromising drug laws by granting sentencing judges discretion to depart from certain presumptive minimum terms if the sentencing courts found on the record that "there are substantial and compelling reasons to do so." The Senate Analysis of the bill package indicates that the Legislature intended to give the sentencing judges "greater flexibility in making sentencing decisions based on the individual circumstances of a case":

> Also, by allowing judges to depart from the minimum terms, and reducing the minimum for larger quantities, the bill would moderate what has been an uncompromising law and would give judges greater flexibility in making sentencing decisions based on the individual circumstances of

a case. [Senate Analysis, SB 598, 600, 603, 610, Third Analysis, August 29, 1988.]

There is nothing in the language of the statute or its legislative history that limits the discretion of sentencing judges to consideration of only those sentencing factors that are both "objective" and "verifiable." Such restrictions are neither expressed nor implied in the law. The statute requires the articulated reasons for departure to be "substantial and compelling," nothing more, nothing less.

The majority has chosen to rewrite the statute at issue. Its use of preamendment legislative history is puzzling. It appears that the majority relies upon the Legislature's now-discarded intent of permitting no deviation from the mandatory minimums only because there is no support for *Downey-Krause* in the legislative history of the 1987-1988 amendments.

The test created by the majority is a judicial invention never contemplated by the Legislature. The key terms "objective" and "verifiable" remain undefined and are therefore unworkable. We cannot look to the Legislature for guidance, because the Legislature has not used these terms.

The problem of applying such vague standards is readily apparent in this case. Whether defendant Hill's substantial family support is an "objective" and "verifiable" sentencing factor is anyone's guess.

Furthermore, and most importantly, the seven-judge majority is apparently unable to agree on the application of *Downey-Krause* to the case at issue. Accordingly, the majority decides not to decide. This abdication of responsibility will result in yet another resentencing for Mr. Hill. Although all relevant facts and factors are known, Mr. Hill's

fate remains in limbo. If the drafters of *Downey-Krause* cannot agree on its application, how can we expect sentencing judges to rationally apply the test?

*Downey-Krause* is reminiscent of the discarded no-fault automobile insurance threshold standard of an "objectively manifested" injury created by *Cassidy v McGovern,* 415 Mich 483; 330 NW2d 22 (1982), and eliminated by *DiFranco v Pickard,* 427 Mich 32; 398 NW2d 896 (1986). In the former opinion, the Supreme Court held that for an injury to exceed the tort threshold of "serious impairment of body function" it was necessary for the injury to be "objectively manifested." The requirement was construed by our Court to mean that threshold injuries must be subject to "medical measurement." *Williams v Payne,* 131 Mich App 403, 409-410; 346 NW2d 564 (1984). Recovery was allowed only for such "verifiable" injuries. Mere subjective complaints unsupported by "objective" findings were deemed insufficient.

Shortly after their judicial promulgation, the "objective," "verifiable," and "medical measurement" standards of *Cassidy* and its progeny were discarded by the Supreme Court as "almost insurmountable obstacle[s]" not intended by the Legislature. *DiFranco, supra* at 66. Similarly, I believe that the *Downey-Krause* test ultimately will be overturned by the Supreme Court as an improper exercise of judicial legislation.

Like the majority, I am deeply concerned about the devastating effect of illegal drugs on society. Personally, I favor harsh sentences for all drug dealers. As a judge, however, I am sworn to uphold our constitutions and to apply our laws as written by the Legislature. We must never forget that we are not legislators. Our personal views regarding

drug policy should not dictate our construction of statutes passed by the Legislature.

In the instant case, I fear that the majority has impermissibly allowed its personal views regarding drug policy to influence its decision. Clearly, the underlying purpose and intent of the majority's opinion is to impose standards and hurdles that no defendant can overcome. If defendant Hill's case is not "substantial and compelling," I am hard-pressed to imagine any case that will pass muster under *Downey-Krause.*

II

If the statute at issue were construed as intended by the Legislature, the parameters of the limited discretion afforded would become more clearly defined in the course of our case by case review. I would direct careful review of the individual circumstances of each offense and the characteristics of every offender. In doing so, all relevant factors would be considered, including, but not limited to, the nonexhaustive list approved in *People v Downey,* 183 Mich App 405; 454 NW2d 235 (1990). In addition, the following traditional sentencing factors and objectives would be applied:

> Sentencing requires consideration of a number of factors: (1) severity of the crime; (2) the nature of the crime; (3) circumstances surrounding the criminal behavior; (4) defendant's attitude toward his criminal behavior; (5) defendant's criminal history; (6) defendant's social and personal history; and (7) statutory sentencing limits. See [*People v*] *Coles,* [417 Mich 523, 548 n 29; 339 NW2d 440 (1983)]. These factors should then be balanced with the objectives of imposing sentence: discipline of the wrongdoer, protection of society, reformation of the offender, and deterrence of others. See *Coles, supra,* p 550; *People v Snow,* 386 Mich 586,

592; 194 NW2d 314 (1972). The result should be a sentence "tailored to the particular circumstances of the case and the offender in an effort to balance both society's need for protection and its interest in maximizing the offender's rehabilitative potential." *People v McFarlin,* 389 Mich 557, 574; 208 NW2d 504 (1973). [*People v Ross,* 145 Mich App 483, 495-496; 378 NW2d 517 (1985).]

Although a sentencing judge should not be limited to consideration of sentencing factors that are both "objective" and "verifiable," I recognize that conduct that may be so characterized may prove to be the most substantial and compelling. I would expect "substantial and compelling reasons" to be found only in exceptional cases, and I doubt that "subjective" considerations, standing alone, will prove to be substantial and compelling. The essence of the limited discretion afforded by the statute has been aptly described as follows:

> We believe the sentencing judge captured the essence of the statute when he stated his belief that "it must be something basic, something that would compel a judge to deviate" from the statute. [*People v Williams,* 189 Mich App 400, 403; 473 NW2d 727 (1991).]

### III

It is appropriate at this juncture to set forth what I believe is an appropriate standard of review. In this regard, I agree with both *Downey* and *Troncoso* that sentencing judges do not possess unfettered discretion to depart and that the presumptive minimum term is the appropriate sentence absent a showing to the contrary. *Downey, supra* at 416-417. To be sure, the presumptive

minimum is indeed the point at which to begin in each and every case.

From that point forward, however, the sentencing court must make several determinations. When a defendant proffers reasons in support of a lesser minimum sentence, the court must decide as a matter of fact whether the factors urged upon it by the defendant actually exist. Such findings of fact are subject to review under the clearly erroneous standard.

Assuming the court finds that certain mitigating factors do exist, it must then determine whether they are of sufficient weight and significance to be deemed "substantial and compelling." Such a determination is most appropriately committed in the first instance to the sound discretion of the sentencing court. I emphasize, however, that the court must exercise *sound* discretion. Further, the sentencing court must adequately articulate on the record its reasons for departure, and the facts and factors considered must prove to be substantial and compelling. See, e.g., *People v Bates,* 190 Mich App 281; 475 NW2d 392 (1991); cf. *People v Williams, supra.* The mere use by the sentencing court of the words "substantial and compelling" will not serve to turn an unjustified departure into a justified one. In such a case, I would not hesitate to find an abuse of discretion.

IV

A

In our previous decision in this case, a panel of this Court concluded that it was the individual characteristics of the defendant, not the facts surrounding the crime, that proved to be "substantial and compelling." I agree with this assessment of both the offense and the offender.

The facts of the crime are tragically common. The young defendant, in need of money to purchase a new automobile, decided to bypass normal economic channels in an attempt to achieve quick riches. Mr. Hill consciously and deliberately entered the market of illegal narcotics, lured by the anticipation of easy profits. I find no facts surrounding the crime that lessen defendant's culpability to any degree sufficient to permit a downward departure from the presumptive minimum. Cf. *People v Bates, supra.*[1]

The amount of cocaine at issue was significant (75.86 grams), and the defendant's possession of a pager is evidence suggestive of defendant's experience in the drug trade. Although defendant neither possessed a weapon nor used any violence, I do not find such facts substantial or compelling. On the contrary, had violence or a weapon been used, defendant would be criminally responsible for additional crimes and would be facing multiple sentences.

**B**

Although I find insufficient mitigating circumstances relating to the offense, I would nevertheless affirm on the basis of the substantial and compelling reasons relating to the offender. As previously noted, the defendant was only nineteen years of age at the time of the offense. He had no prior juvenile or adult record, and this appears to be his first contact with the criminal justice system. Mr. Hill is a recent high school graduate who is strongly supported by a loving father and mother. The statements and showings of support by the defendant's parents clearly moved and

---

[1] *People v Bates* is a post-*Troncoso* decision in which this Court held that the facts of the crime mitigated the defendant's culpability to a degree that proved to be "substantial and compelling." I agree with *Bates* and cite it as an example of our case by case review.

influenced Judge Lippitt in his decision to delay
sentencing. Although the delay in sentencing may
have been improper,[2] I cannot ignore the fact that
it occurred and that defendant's conduct during
this period was exemplary.

On the basis of defendant's postarrest conduct
coupled with his lack of a prior record, substantial
family support, and young age, I agree with the
Oakland Circuit Court that "substantial and com-
pelling reasons" were present to permit a down-
ward departure from the presumptive minimum
sentence. Upon this record, I find no abuse of
sentencing discretion.

I would affirm.[3]

DANHOF, C.J., and WEAVER, J., concurred.

MURPHY, J. (*dissenting*). I would follow *People v
Troncoso,* 187 Mich App 567; 468 NW2d 287
(1991), rather than the combined holding in *People
v Downey,* 183 Mich App 405; 454 NW2d 235
(1990), and *People v Krause,* 185 Mich App 353;
460 NW2d 900 (1990), as the basis for determining
and reviewing a trial court's discretion in depart-
ing from the statutory mandatory minimum sen-
tence for "substantial and compelling" reasons. I
agree that the trial judge's decision to depart from
the mandatory minimum sentence should be af-
firmed in this case for the reasons set forth in II,
III, and IV of Judge GRIFFIN's dissent.

MICHAEL J. KELLY and JANSEN, JJ., concurred.

[2] The delayed sentencing statute applies only to probationable
offenses. MCL 771.1(1); MSA 28.1131(1). The present offense is not a
probationable offense. MCL 333.7401(3); MSA 14.15(7401)(3).

[3] Individually, Judge GRIFFIN also dissents on the ground that the
Court is without authority to vacate defendant's sentence and to
remand for resentencing when the majority has not ruled the sen-
tence to be invalid. *In re Jenkins,* 438 Mich 364, 369, n 3; 475 NW2d
279 (1991); *People v Whalen,* 412 Mich 166, 169-170; 312 NW2d 638
(1991), and *People v James Williams,* 437 Mich 1045 (1991) (BOYLE, J.,
dissenting).