PEOPLE v BARAJAS

Docket No. 124795. Submitted October 14, 1992, at Grand Rapids. Decided March 2, 1993, at 9:25 A.M. Leave to appeal sought.

Arturo C. Barajas was convicted by a jury in the Calhoun Circuit Court, James C. Kingsley, J., of conspiracy to possess more than 650 grams of cocaine. He was sentenced to life in prison without parole. He appealed, alleging that there was insufficient evidence to establish a conspiracy because the package that was allegedly prepared for delivery to him by an alleged conspirator contained more than one kilogram of baking soda and a separate rock of cocaine weighing only 26.01 grams that was positioned so that a person testing the contents of the package would only test the rock of cocaine and not the baking soda. Apparently, the conspirator attempted to defraud the defendant by delivering less cocaine than allegedly agreed upon.

The Court of Appeals *held:*

The package contained two separate items, baking soda and a rock of cocaine, rather than a single mixture containing cocaine. Because the package did not contain more than 650 grams of a mixture containing cocaine, it did not establish an agreement between the defendant and the alleged conspirator for the defendant to possess more than 650 grams of cocaine. Because there is no evidence that the alleged conspirator decided to defraud the defendant only after entering into the conspiracy, there is insufficient evidence to establish the defendant's guilt of the crime of conspiracy to possess more than 650 grams of cocaine. The defendant's conviction must be vacated and he must be discharged from custody.

Conviction vacated.

1. CONSPIRACY — INTENT TO COMMIT UNLAWFUL ACT.

A conspiracy is an agreement, expressed or implied, between two or more persons to commit an unlawful or criminal act; a

REFERENCES

Am Jur 2d, Conspiracy § 13; Drugs, Narcotics and Poisons §§ 16-22.
See ALR Index under Conspiracy; Drugs and Narcotics; Specific Intent.

conspiracy requires that two or more persons intend to agree
and intend that the object of the agreement be achieved; a
conspiracy does not occur when one of two alleged conspirators
never intends to commit an unlawful or criminal act and only
feigns an intent to participate.

2. Controlled Substances — Words and Phrases — Mixtures
   Containing Cocaine.

In determining whether a defendant possessed 650 grams or more
of a mixture containing cocaine, the amount of cocaine within
the mixture is irrelevant; rather, it is the weight of the entire
mixture, without regard to purity, that is relevant; to consti-
tute a mixture containing cocaine, the mixture must be reason-
ably homogeneous or uniform and it should be reasonably
difficult to separate the cocaine from the filler material because
of the mixing or blending of the two substances (MCL
333.7403[2][a][i]; MSA 14.15[7403][2][a][i]).

*Frank J. Kelley,* Attorney General, *Thomas L.
Casey,* Solicitor General, *Jon R. Sahli,* Prosecuting
Attorney, and *Matthew L. Glaser* and *Ronald S.
Pichlik,* Assistant Prosecuting Attorneys, for the
people.

*Gemrich, Moser, Bowser, Fette & Lohrmann* (by
*Scott Graham),* for the defendant on appeal.

Before: Holbrook, Jr., P.J., and MacKenzie and
Sawyer, JJ.

Per Curiam. Defendant was convicted, following
a jury trial, of conspiracy to possess over 650
grams of cocaine. MCL 750.157a(a); MSA 28.354(1)
(a) and MCL 333.7403(2)(a)(i); MSA 14.15(7403)(2)(a)
(i). He was sentenced to life in prison without
parole. He now appeals, and we reverse.

Defendant's conviction arises out of a compli-
cated drug deal. Briefly, defendant was to purchase
approximately one kilogram of cocaine from Rene
Vina. However, before the purchase was com-
pleted, one of Vina's employees, Richard Kellogg,
began cooperating with the police. Apparently,

Vina intended to make two sales on this particular occasion: one to defendant and one to a purchaser to be arranged by Kellogg. Unfortunately for Vina, Kellogg set up the sale with an undercover police officer.

Defendant was arrested, however, before the sale was completed. A search of Vina's motel room revealed a package intended for delivery to defendant. That package contained over one kilogram of baking soda and a rock of cocaine weighing 26.01 grams. The rock was taped to the inside of the box and the box had a V-style slit in it exposing the rock. Apparently, the purpose of the slit was to allow inspection of the contents by the purchaser (defendant) and was placed so that defendant would test the rock of cocaine and not the baking soda. One of the police officers involved expressed the opinion that Vina was endeavoring to "burn" defendant by delivering a smaller quantity of drugs than for which he had contracted.

Thus, although defendant never possessed the drugs in question, the prosecutor theorized that defendant had reached an agreement with Vina to possess the drugs. Accordingly, the prosecutor charged defendant with conspiracy.

Defendant's first argument is dispositive. Defendant argues that there was insufficient evidence to establish the conspiracy. We agree. We review an argument regarding the sufficiency of evidence by viewing the evidence in the light most favorable to the prosecutor and determining whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979).

A conspiracy is an agreement, expressed or implied, between two or more persons to commit an unlawful or criminal act. *People v Bettistea,* 173

Mich App 106, 117; 434 NW2d 138 (1988). See also *People v Atley,* 392 Mich 298, 310-311; 220 NW2d 465 (1974); CJI2d 10.1; Dressler, Understanding Criminal Law, § 29.01[A], p 373. Thus, to establish that defendant and Vina conspired in the case at bar, the prosecutor had to show, inter alia, that defendant and Vina had agreed that defendant would commit the crime of possession of more than 650 grams of cocaine. That is, the prosecutor had to establish that both defendant and Vina intended defendant to possess the requisite amount of cocaine.

Proof of the agreement may be established by circumstantial evidence. *Atley, supra* at 311. In this case, the prosecutor points to the package prepared for delivery to defendant. This is the package that contained over a kilogram of baking soda and the twenty-six-gram rock of cocaine. We would agree that if that package can be considered as constituting a mixture containing cocaine and weighing over 650 grams, combined with other evidence produced at trial that we need not review here, then defendant is guilty of the crime charged. We, however, reject the prosecutor's argument that this constitutes such a mixture.

The possession of cocaine, as well as other offenses, is punished with regard to the amount of the substance involved—the greater the amount involved, the greater the penalty. MCL 333.7403(2)(a)(i); MSA 14.15(7403)(2)(a)(i) sets forth the penalty for possessing "650 grams or more of *any mixture* containing" cocaine. (Emphasis added.) Thus, the amount of cocaine within the mixture is irrelevant; rather, it is the weight of the entire mixture that establishes the penalty, without regard to purity. *People v Kidd,* 121 Mich App 92; 328 NW2d 394 (1982). Thus, a person delivering a mixture containing 649 grams of baking soda and

one gram of cocaine is punished more seriously than an individual who delivers 649 grams of pure cocaine.

As stated above, we agree that if the package prepared for delivery to defendant can be considered to be a mixture containing cocaine that weighs over 650 grams, then that evidence, along with the other evidence produced at trial, establishes that defendant and Vina conspired to commit the offense of possession of over 650 grams of cocaine. Unlike the prosecutor, however, we do not believe that the package contained a mixture weighing over 650 grams that contained cocaine. Rather, as will be discussed below, the package contained a mixture containing cocaine that weighed twenty-six grams (the rock of cocaine); it also contained over a kilogram of baking soda.

Where a word is undefined by statute, it is to be construed according to its common and approved usage. *People v Troncoso,* 187 Mich App 567, 573; 468 NW2d 287 (1991). In doing so, resorting to the dictionary definition is appropriate. *Id. The Random House College Dictionary: Revised Edition,* p 856, defines "mixture" as follows:

> 1. a product of mixing. 2. any combination of contrasting elements, qualities, etc. 3. *Chem., Physics.* an aggregate of two or more substances that are not chemically united and that exist in no fixed proportion to each other. Cf. compound (def. 8). . . . 5. the act of mixing. 6. the state of being mixed. . . .—Syn. 1. blend, combination; compound. 2. miscellany, medley, melange.

*Random House,* p 856, defines "mix," in part, as follows:

> 1. to put (various materials, objects, etc.) to-

gether *in a homogeneous or reasonably uniform mass.* [Emphasis added.]

*Random House,* p 143, defines "blend," in part, as follows:

> 1. to mix smoothly and inseparably together . . .
> 3. to mix or intermingle smoothly and inseparably.
> 4. to fit or relate harmoniously . . . 5. to have no perceptible separation . . . .

In light of these definitions, we conclude, contrary to the prosecutor's suggestion, that the "mixture" containing cocaine must be reasonably homogeneous or uniform. That is, the cocaine and the filler (in this case, baking soda) must be "mixed" together to form a "mixture" that is reasonably uniform. A sample from anywhere in the mixture should reasonably approximate in purity a sample taken elsewhere in the mixture.[1] It should be reasonably difficult to separate the cocaine from the filler material because of the mixing or blending of the two substances.

In the case at bar, the evidence does not support the conclusion that the cocaine was mixed with the baking soda. Indeed, when the baking soda was poured out of the box, the rock of cocaine remained, having been taped to the box. Clearly, the cocaine and the baking soda were easily separated. Further, the concentration of cocaine was not at all reasonably uniform or homogeneous. A sample taken from the baking soda would have yielded a mixture containing zero percent cocaine and one

[1] We hasten to add that we are not saying that the mixture must be absolutely uniform or that there is a bright-line rule designating the degree of uniformity required.

hundred percent baking soda.[2] A sample taken from the rock of cocaine would yield a mixture containing 67.9 percent cocaine and 32.1 percent filler. Further, the two substances have somewhat differing physical properties. The rock of cocaine is a large, solid object; the baking soda is a powdery solid. Simply put, the package contained two separate items, baking soda and a rock of cocaine, rather that a single mixture containing cocaine.

Furthermore, our view of the definition of "mixture" and its application to this case is consistent with the reasoning behind basing punishment on the weight of the mixture and not the amount of actual cocaine. In *People v Lemble,* 103 Mich App 220, 223; 303 NW2d 191 (1981), we noted that the "greater the quantity of the mixture, regardless of the degree of purity, the greater the potential harm to society." Thus, basing punishment on weight without regard to purity serves to advance the legislative purpose of deterring drug distribution. *Id.* In this case, assuming that the police had not intervened, defendant presumably would not have merely divided the package into smaller quantities for further delivery because most such packages would only contain baking soda.[3] Thus, the same danger is not presented by the package in this case as when there is a mixture that can be divided into smaller packages for sale.

For the above reasons, we conclude that the

[2] We should note that it does not appear to us that the baking soda was ever actually tested for the presence of cocaine. Certainly, we are not informed of any evidence that it was. Accordingly, we assume that the baking soda itself did not contain any cocaine.

[3] Arguably, defendant could have broken the rock of cocaine down to powder and then mixed the cocaine and baking soda together to form a mixture, albeit of extremely low purity. However, such a mixture does not exist until it is, in fact, mixed. Punishment cannot be based on the potential for creating a mixture, lest an individual be convicted of possessing over 650 grams when he has one gram of cocaine and a pound of baking soda in the kitchen cupboard that could be mixed with the cocaine.

package did not contain a mixture of cocaine weighing over 650 grams. Therefore, the package does not establish an agreement by Vina and defendant for defendant to possess over 650 grams of cocaine. A conspiracy could also, however, be established if it can be shown that Vina did agree to deliver over 650 grams of cocaine to defendant and only thereafter decided to "burn" defendant by delivering less. However, a conspiracy requires that "two or more persons intend to agree *and* intend that the object of their agreement be achieved." Dressler, *supra,* § 29.05[A], p 384 (emphasis in original). Professor Dressler further explains this concept:

> Justice Cardozo said that "[i]t is impossible . . . for a man to conspire with himself." This comment follows from the fact that a conspiracy is an agreement and an agreement is a group act. Unless at least two people form an agreement no one does. The result is that at common law the prosecutor must prove that at least two persons possessed the requisite *mens rea* of a conspiracy.
>
> *   *   *
>
> The plurality rule also prevents the conviction of a party to a two-person agreement if it is demonstrated that one person lacked the specific intent of conspiracy. *If one party to the alleged conspiracy feigned the intent to commit or to participate in the offense* (e.g., she was a police officer) or was insane and lacked the requisite intent, *the remaining party cannot be convicted.* [*Id.,* § 29.06[A], p 389, quoting *Morrison v California,* 291 US 82, 92; 54 S Ct 281; 78 L Ed 664 (1934) (emphasis added).]

Thus, if Vina had originally intended, at the time of making the agreement with defendant, to deliver over 650 grams of cocaine, then there was

a conspiracy even if Vina later abandoned that plan in favor of defrauding defendant. However, if Vina always intended to defraud defendant and merely told defendant he would deliver a kilogram of cocaine, knowing he had no such intention and was going to defraud defendant, then Vina merely feigned his intent to participate in the crime of possession of over 650 grams of cocaine. In such case, there was no conspiracy to possess over 650 grams of cocaine because Vina knew at the time of making the agreement with defendant that he would not be participating in such an offense.

However, we have found no evidence, nor has the prosecutor pointed us to such evidence, from which the trier of fact could conclude that Vina decided to defraud defendant only after entering into the conspiracy. As far as the record establishes, Vina may well have intended all along to defraud defendant and, therefore, there never was a conspiracy.

Although it may be that defendant is guilty of attempted possession of over 650 grams of cocaine, there was insufficient evidence to establish defendant's guilt of the crime of conspiracy. Our resolution of this issue renders it unnecessary to consider defendant's remaining issues.

Defendant's conviction is vacated and defendant is ordered discharged from custody.