## PEOPLE v WEATHERSBY

Docket No. 143440. Submitted October 18, 1993, at Lansing. Decided
  March 7, 1994, at 9:55 A.M. Leave to appeal sought.
  George C. Weathersby was convicted in the Muskegon Circuit
  Court, R. Max Daniels, J., of conspiracy to accept money
  contingent on an uncertain event and pleaded guilty of being
  an habitual offender, second offense. The defendant appealed.

  The Court of Appeals *held:*

  1. There is no question that the original indictment issued by
  the one-man grand jury against the defendant was deficient in
  that it failed to specify which of Michigan's gambling laws the
  defendant was charged with conspiring to violate. Because the
  amended indictment, submitted after the preliminary examina-
  tion but before trial, charged no new offense, it was the type of
  amendment that a trial court properly could allow pursuant to
  statute. The amended indictment, while correcting the defect of
  the original indictment, in no way prejudiced the defendant,
  inasmuch as the information in the amended indictment reiter-
  ated information that was known already by the defendant as a
  result of the testimony at the preliminary examination.

  2. The six-month statutory term of a one-man grand jury
  runs from the date of the appointment of the grand juror
  rather than from the date of the first hearing conducted by the
  grand juror. The indictments in this case were not issued
  within the statutory period; however, expiration of the statu-
  tory period before issuance of the indictments did not invali-
  date them. Michigan recognizes the existence of de facto grand
  juries whereby the issuance of an indictment after the term of
  a grand jury is not void if the substance of the indictment
  involves matters considered during the statutory term of the
  grand jury.

  3. "Wharton's Rule," which provides that an agreement by

REFERENCES

Am Jur 2d, Criminal Law §§ 525, 535, 589; Gambling § 34; Grand
  Jury § 10; Indictments and Informations § 179; Trial § 1624.

Criminal conspiracies as to gambling. 91 ALR2d 1148.

Comment Note.—Power of court to make or permit amendment of
  indictment. 17 ALR3d 1181.

two persons to commit a crime cannot be prosecuted as a conspiracy where the target crime requires the participation of two persons, does not apply to a charge of conspiracy to accept money on an uncertain event. Accordingly, the trial court's instruction to the jury concerning the requirements of the rule should not have been given; however, because it was to the defendant's advantage, the giving of that instruction was harmless error.

4. The court's instructions clearly informed the jury that the defendant could not be found guilty of conspiracy if he was only a participant in the illegal gambling operation.

5. The trial court's questioning of a prosecution witness crossed the line of judicial impartiality and took on the prosecutor's function; however, the error resulting from that questioning was harmless because the court's actions did not prejudice the defendant or deprive him of his right to a fair trial.

6. The evidence at trial was sufficient, if believed by the jury, to establish the criminal conspiracy and that the defendant was one of the conspirators.

7. The question whether the prosecution should have charged the defendant under a different statute was not raised below and is not of constitutional magnitude; accordingly, it is not preserved for appellate review.

8. The fact that the Michigan sentencing guidelines contain no recommendation for the conviction involved here does not require the sentencing court to look to the federal sentencing guidelines for similar federal offenses.

Affirmed.

1. INDICTMENT AND INFORMATION — AMENDMENT OF INDICTMENTS — PREJUDICE.

A trial court may allow amendment of an indictment at any time where the amendment will not prejudice the defendant (MCL 767.76; MSA 28.1016).

2. GRAND JURY — ONE-MAN GRAND JURY — COMMENCEMENT OF TERM.

The six-month statutory term of a one-man grand jury runs from the date of the appointment of the grand juror rather than from the date of the first hearing by the grand juror (MCL 767.4; MSA 28.944).

3. INDICTMENT AND INFORMATION — GRAND JURY — ISSUANCE OF INDICTMENT.

An indictment issued by a one-man grand jury is not rendered void by the fact that it is issued after expiration of the statu-

tory term of the grand juror if it involves a matter considered by the grand juror during the statutory term.

4. Conspiracy — "Wharton's Rule" — Gambling.

"Wharton's Rule," which provides that an agreement by two persons to commit a crime cannot be prosecuted as a conspiracy where the target crime requires the participation of two persons, is not applicable to the crime of conspiracy to accept money contingent on an uncertain event (MCL 750.157a, 750.301; MSA 28.354[1], 28.533).

5. Trial — Judges — Judicial Questioning of Witnesses — Impartiality — Harmless Error.

An instance of judicial questioning of witnesses that crosses the line of judicial impartiality does not necessarily require reversal; rather, it is subject to a harmless error analysis.

6. Criminal Law — Sentences — Sentencing Guidelines.

Sentencing courts are not required to consider federal sentencing guidelines of similar offenses where there is no sentencing guidelines for an offense.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Tony D. Tague,* Prosecuting Attorney, and *Kevin A. Lynch,* Senior Assistant Prosecuting Attorney, for the people.

*Lawrence J. Emery,* for the defendant.

Before: Michael J. Kelly, P.J., and Shepherd and Murphy, JJ.

Michael J. Kelly, P.J. Defendant was convicted of conspiracy to accept money contingent on uncertain event, MCL 750.157a; MSA 28.354(1); MCL 750.301; MSA 28.533, following a five-day jury trial. More specifically, he was convicted of involvement in an illegal numbers operation in Muskegon and Kent counties. Defendant subsequently pleaded guilty of being an habitual offender, second offense, MCL 769.10; MSA 28.1082, and was sentenced to 3 to 7½ years' imprisonment. Defendant appeals as of right. We affirm.

I

Defendant challenges the validity of his indictment. His argument is twofold: First, he claims that his original indictment of January 15, 1991, was substantively deficient and that the amended indictment of June 12, 1992, was ineffective to cure the defect. Second, defendant argues that the indictment was invalid because the grand juror's authority had expired before the original indictment was issued.

Pursuant to MCL 767.45(1); MSA 28.985(1), an indictment or information must contain the following:

> a. The nature of the offense stated in language which will fairly apprise the accused and the court of the offense charged.
> b. The time of the offense as near as may be.
> . . .
> c. That the offense was committed in the county or within the jurisdiction of the court.

The Supreme Court has defined the test for sufficiency of an indictment as follows:

> "Does it identify the charge against the defendant so that his conviction or acquittal will bar a subsequent charge for the same offense; does it notify him of the nature and character of the crime with which he is charged so as to enable him to prepare his defense and to permit the court to pronounce judgment according to the right of the case?" [*People v Adams,* 389 Mich 222, 243; 205 NW2d 415 (1973), quoting *People v Weiss,* 252 AD 463, 467-468; 300 NYS 249 (1937), rev'd on other grounds 276 NY 384; 12 NE2d 514 (1938).]

The original indictment of January 15, 1991, read as follows:

The Muskegon County Grand Juror charges that George Carl [sic] Weathersby, on or about January 1, 1989, until on or about July 31, 1990, in the County of Muskegon, State of Michigan, did unlawfully conspire, combine, confederate and agree with certain other unnamed coconspirators to violate the Gambling Laws of the State of Michigan; contrary to MCL 750.157a(b); MSA 28.354(1)(b) and against the peace and dignity of the People of the State of Michigan.

We agree with defendant that this indictment did not fulfill the requirements set forth in *Adams, supra,* and MCL 767.45(1); MSA 28.985(1). The indictment failed to specify which of Michigan's gambling laws defendant was charged with conspiring to violate. See *People v Brown,* 299 Mich 1, 2; 299 NW 784 (1941). The phrase "gambling laws" is a general term that could prohibit a wide range of activities. The use of the term in the indictment did little to help defendant prepare a defense. See *People v Westerberg,* 274 Mich 647, 648-650; 265 NW 489 (1936).

However, the original indictment was amended on June 12, 1991. Thus, the issue becomes whether the amendment was effective to cure the deficiency in the original indictment. We believe it was.

The amended indictment read as follows:

The Muskegon County Grand Juror charges that George C. Weathersby, on or about January 1, 1989 until on or about July 31, 1990, in the County of Muskegon, State of Michigan, did unlawfully conspire, combine, confederate and agree with certain other co-conspirators, to-wit: Oliver Heayes, a caller identified as "910", a caller identified as "Sam", a caller identified as "A-5", a caller leaving the message "It's twelve books and the amount is $6.00, that's including overlooks" and the writers of some seventy-five various bet slips

dated July 31, 1991, to violate the gambling laws of the State of Michigan; contrary to MCL 750.157a(b); MSA 28.354(1)(b) and MCL 750.301; MSA 28.533 and against the peace and dignity of the People of the State of Michigan.

This indictment meets all sufficiency requirements. The next step is whether the amendment was authorized under Michigan law. We believe it was.

Pursuant to MCL 767.75; MSA 28.1015, no indictment may be quashed, set aside, or dismissed on the grounds that it contains an "uncertainty." Rather, if a court is of the opinion that an uncertainty exists, it may order an amendment of the indictment to cure the defect. MCL 767.76; MSA 28.1016 provides in relevant part:

> The court may at any time before, during or after the trial amend the indictment in respect to any defect, imperfection or omission in form or substance or of any variance with the evidence. If any amendment be made to the substance of the indictment or to cure a variance between the indictment and the proof, the accused shall on his motion be entitled to a discharge of the jury, if a jury has been impaneled and to a reasonable continuance of the cause unless it shall clearly appear from the whole proceedings that he has not been misled or prejudiced by the defect or variance in respect to which the amendment is made or that his rights will be fully protected by proceeding with the trial or by a postponement thereof to a later day with the same or another jury.

Michigan law clearly contemplates amending indictments for substantive defects without interrupting the trial process, at least where the amendment would not prejudice the defendant. Cf. *People v Hunt,* 442 Mich 359; 501 NW2d 151 (1993).

In this case, the prosecutor filed a bill of particulars and moved to amend the indictment on June 7, 1991. He informed the trial judge of the motion before voir dire. The judge called a short recess to allow everyone to read the amended indictment and then proceeded to overrule defendant's objection to the amendment. This ruling was proper. The amendment had not added a new offense, but rather merely had rendered specific what had previously been stated in general terms. Because no new offense was charged, defendant's right to receive a preliminary examination on the new indictment was not violated. See *People v Price*, 126 Mich App 647, 653; 337 NW2d 614 (1983). The nature of the evidence introduced at defendant's preliminary examination, four months before trial, had clearly indicated that the crime charged was conspiracy to run an illegal numbers operation. The amended indictment merely reiterated what was already known to defendant through other procedures. No new evidence was needed to support the charge in the amended indictment. The amendment did not prejudice defendant, but rather was a proper and effective means of curing the substantive deficiency in the original indictment.

II

Defendant's second basis for challenging the validity of the indictment is procedural. He argues that the grand juror's authority expired on November 23, 1990, before either of the two indictments against defendant was issued.

In this case, the grand juror was a circuit court judge appointed on May 23, 1990, the date of entry of the order for judicial investigation. Pursuant to MCL 767.4; MSA 28.944, grand juror inquiries and

proceedings are limited to six months unless the court allows an extension for an additional period not to exceed six months. In its May 23, 1990, order, the circuit court ordered the grand juror to convene on July 16, 1990, for the purpose of conducting a judicial investigation into defendant's activities. The court did not grant an extension of the investigation beyond the statutory six-month period.

The people argue that the six-month period did not begin until July 16, 1990, which would place the January 15, 1991, indictment within the statutory period. We disagree with the people's interpretation of the six-month statutory provision and agree with defendant's contention that the period commenced with the May 23, 1990, order authorizing the investigation by the grand juror. Accordingly, we conclude that the indictments were not issued within the six-month period. However, we further conclude that the expiration of the statutory period did not invalidate the indictments.

The commencement date of a grand juror's six-month term presents an issue of first impression in Michigan. The applicable statutory provision, MCL 767.4; MSA 28.944, implicitly describes the six-month period as a period of "inquiry or proceeding" without defining those terms. The federal courts employ the date of impanelment as the commencement date of a grand jury, relying on the authority of the grand jury to take action as the decisive factor. *United States v Armored Transport, Inc,* 629 F2d 1313, 1316-1317 (CA 9, 1980), cert den 450 US 965 (1981).

We believe that the May 23, 1990, order of the circuit court is analogous to the impanelment of a grand jury and that Michigan statutory law supports the use of federal principles by analogy. Under MCL 767.3; MSA 28.943, a grand juror is

authorized to conduct an inquiry upon the issuance of the order appointing the grand juror. The same provision indicates that the purpose of the grand juror is to hear testimony and gather evidence, and it authorizes the grand juror to take preparatory actions for hearing testimony, such as the summoning of witnesses by subpoena. The term "proceeding" is broad enough to encompass within its ordinary meaning all steps taken toward a given end. We hold that the six-month period in MCL 767.4; MSA 28.944 commences with the order appointing the grand juror and authorizing that action as a grand juror may be taken—in this case, May 23, 1990—and not on the date that the grand juror begins hearings. The indictments of January 15, 1991, and June 12, 1991, were outside the period of the grand juror's statutory authority.

However, Michigan law does not perforce invalidate the indictments. Michigan adheres to the rule that recognizes the existence of a de facto grand jury.

> "Though the statute contemplates that a grand jury will complete its work during the term to which it is summoned, yet, when it is continued into the next term, and is recognized by the court as a valid jury in receiving its indictments, it is a *de facto* grand jury, and its indictments are not void."
> "An indictment of a *de facto* grand jury, not being void, cannot be set aside on motion to quash or by challenge to the array." [*People v Kaplan,* 256 Mich 36, 38-39; 239 NW 349 (1931), quoting the headnotes in *People v Morgan,* 133 Mich 550 (1903).]

The facts of this case fit the conditions of that rule. An exception to the rule exists where the grand jury or juror considers new matters after

the expiration of the statutory term. However, there is no evidence in this case that any consideration was given at any time to any matter other than defendant's role in an illegal numbers operation in cooperation with the coconspirators listed in defendant's second indictment. There was also no undue delay in issuing the first indictment almost two months after expiration. Accordingly, we conclude that neither indictment is void.

III

Defendant next challenges his conviction for conspiracy under "Wharton's Rule." He argues that the trial court erred in failing to instruct the jury about the rule.

Wharton's Rule operates as a substantive limitation on the scope of the crime of conspiracy (sometimes called the darling of the prosecutor's arsenal). It provides that an agreement by two persons to commit a crime cannot be prosecuted as a conspiracy where the target crime requires the participation of two persons. *People v Clifton,* 70 Mich App 65, 67; 245 NW2d 175 (1976). The rule does not apply where the number of alleged coconspirators exceeds the number necessary to commit the target crime, *People v White,* 147 Mich App 31, 37; 383 NW2d 597 (1985), or where the Legislature intends to impose separate punishment for the conspiracy aspect of the target crime, *Oakland Co Prosecutor v 46th Dist Judge,* 76 Mich App 318, 328-329; 256 NW2d 776 (1977).

Wharton's Rule does not apply to the facts of this case. First, the number of coconspirators in this case exceeds the number needed to violate the gambling provision in MCL 750.301; MSA 28.533. Only two persons are required to gamble illegally under this provision. *Oakland Co Prosecutor, su-*

*pra* at 328. Here, more than two persons were involved in the conspiracy. Second, this Court analyzed these statutory provisions in *Oakland Co Prosecutor, supra* at 328-329, and held that the legislative intent behind the provisions precludes application of Wharton's Rule.

Even if Wharton's Rule did apply, the people correctly point out that the trial court instructed the jury of the requirements of Wharton's Rule:

> To prove the defendant's guilt, the prosecution must prove each of the following elements beyond a reasonable doubt: First, that the *defendant and two or more people* knowingly agreed to commit violation of Section 301 of the gambling law . . . . [Emphasis added.]

Because Wharton's Rule does not apply in this case, we can agree that the trial court's instructions were erroneous, but only to defendant's advantage. Thus, they constituted harmless error at best.

Defendant also alleges that the instructions failed to point out that defendant could not be found guilty of conspiracy if he was "merely a participant in the illegal gambling operation." However, we note the following excerpt from the instructions:

> A finding that defendant was merely with other people who were members of the conspiracy is not enough by itself to prove that defendant was also a member. In addition, the fact that a person did an act that furthered the purpose of an alleged conspiracy is not enough by itself to prove that the person was a member of the conspiracy. . . . [I]t must be shown beyond a reasonable doubt that the defendant agreed to commit the crime . . . .

Defendant's objection is without merit.

IV

Defendant argues that the trial court improperly questioned a prosecution witness to defendant's disadvantage. The witness at issue was a computer expert from the Michigan Department of Treasury who had downloaded information stored on computers that had been seized under warrant in Muskegon and from defendant's residence.

A trial court may question a witness in order to clarify testimony or elicit additional relevant information. *People v Conyers,* 194 Mich App 395, 404; 487 NW2d 787 (1992). The court must exercise caution and restraint to ensure that its questions are not intimidating, argumentative, prejudicial, unfair, or partial. *Id.* at 405. A trial court may not assume the prosecutor's role with advantages unavailable to the prosecution. *People v Sterling,* 154 Mich App 223, 230; 397 NW2d 182 (1986).

For the most part, the trial court asked the witness for information concerning how computers operate in order to educate the jury. There was nothing inherently improper or prejudicial in this line of questioning.

However, the trial court also inquired about three borderline matters: First, it asked about the time involved in setting up a portable computer such as the one found at defendant's house. Defense counsel had noted that defendant's portable computer was not set up to send or receive information at the time it was seized. The witness responded that the computer could have been set up for communication in a matter of minutes. Second, the trial court wanted to know the significance of telephone contacts of short duration between a coconspirator's house and defendant's house. The witness responded that such contacts were probably for the transfer of information be-

tween computers. Finally, the court asked for explanations concerning why there was no telephone directory stored in defendant's portable computer, a tie-up with earlier evidence that indicated that a coconspirator's computer had such a directory.

In response to defendant's objection to these questions, the trial court admitted that the questions were asked to further the people's case:

> *Mr. Emery [defense counsel]:* It's my view that the Court has asked a question of [the witness], questions of her, that were designed to do what the prosecutor could or should have done—extremely capable prosecutor here—and I think the Court's questions were improper. Thank you.
> *The Court:* Of course that's the whole basis for the Court asking questions, and the instruction has already been given where areas that have not been explored by either prosecution or defense (sic), so your objection once again is noted, however, I don't find any substance to it. Bring in the jury.

We believe that the trial court's line of questioning crossed the line of judicial impartiality. However, the court's comments are subject to a harmless error test. See *People v Cole,* 349 Mich 175, 196, 200; 84 NW2d 711 (1957).[1] The fact that a trial court's comments are partial does not necessarily mean that the court appears biased to the jury or that the jury was prejudiced by the comments. Although partial comments or questions

---

[1] We are aware that the opinion in *People v Roby,* 38 Mich App 387, 392; 196 NW2d 346 (1972), suggests that partial comments by a trial judge require reversal. To the extent that the dicta in *Roby* contains such a suggestion and thereby contradicts *Cole,* we think the panel in *Roby* exceeded its charter. In any event, *Roby* can be distinguished as a case in which the Court did not consider the harmless error test.

are only rarely innocuous, we find this to be precisely such a rare case for three reasons.

First, the credibility of a defense witness was not at issue here as it has been in many other cases involving improper questioning by a trial court. See, e.g., *Sterling, supra* at 230; *People v Redfern,* 71 Mich App 452, 457; 248 NW2d 582 (1976); *People v Roby,* 38 Mich App 387, 392; 196 NW2d 346 (1972). Second, the questions asked by the trial court revealed no partiality in themselves. Rather, it was solely the fact that they were asked in furtherance of the people's case that made them partial. Finally, the witness, in fact, already had provided most of the information included in her responses to the trial court's questions. Accordingly, we conclude that the trial court's questioning of the prosecution witness did not prejudice defendant or deprive him of his right to a fair trial.

v

Defendant also claims that the evidence at trial was insufficient to support his conviction. We disagree.

Defendant was convicted of conspiracy to accept money contingent on uncertain event, MCL 750.157a; MSA 28.354(1); MCL 750.301; MSA 28.533. A conspiracy is an agreement, expressed or implied, between two or more persons to commit an unlawful or criminal act. *People v Barajas,* 198 Mich App 551, 553; 499 NW2d 396 (1993).

Defendant contends that there is no evidence that he resided at 1721 Adams SE and owned the items seized at that address. There is. The county sheriff who executed a search warrant at that address testified that defendant appeared during the search and expressed concern about damage

done to his door. A police investigator found a doctor's bill for a George Weathersby in a trash bag at that address. Canceled checks bearing defendant's name bore the Adams address. Testimony was provided by a bank teller who had access to defendant's account and home address, by an agent of the United States Treasury Department who had contacted defendant at the Adams address and heard defendant say that he lived there alone, and by a police officer who helped search the house and heard defendant ask what the officer was doing in "my house" and with "my computer." There is direct evidence of defendant's exclusive dominion and control of the house at 1721 Adams SE. From such evidence, a factfinder could infer that defendant owned the items in the house or entered the information stored in the computer in the house.

Defendant next contends that there was insufficient evidence to infer that he was the individual identified as "Carl." We find it sufficient. The name "Carl" was found in the telephone directory of a coconspirator. One of the telephone numbers next to the name was traced by Michigan Bell to 1721 Adams SE and billed under defendant's name. Telephone records revealed daily calls from defendant's residence to the coconspirator's house. A tape taken from the telephone answering machine at defendant's home included numerous messages for "Carl." From such evidence, a trier of fact reasonably could infer that defendant was "Carl."

Defendant's last objection to the sufficiency of the evidence is that a coconspirator's "runner," who testified at trial, could not tie defendant to the illegal numbers operation in Muskegon County. However, defendant overlooks evidence that he was the runner called "Carl," that the

gambling information in the computers seized at defendant's and a coconspirator's home was identical in many respects, and that both computers contained information showing daily exchanges between them.

Contrary to defendant's assertion, there was an abundance of evidence in support of his conviction.

## VI

Defendant argues for the first time on appeal that his equal protection rights were violated by the prosecutor's decision to charge him with violating the gambling laws rather than more specific statutes against setting up or promoting a lottery, which would have subjected defendant to lighter punishment. Because defendant failed to raise this argument below and fails now to cite authority for his argument, we deem the issue waived. *People v Malone,* 193 Mich App 366, 371; 483 NW2d 470 (1992), lv gtd 442 Mich 867 (1993); *People v Fowler,* 193 Mich App 358, 361; 483 NW2d 626 (1992). Defendant's attempt to characterize the issue as a constitutional one, thereby providing justification for review, does not persuade us. Defendant's argument is basically one of prosecutorial abuse of discretion. Defendant's failure to identify the issue as being one of prosecutorial discretion in his statement of the issues and failure to argue the issue on that basis is all the more reason to consider the issue waived. *People v Yarbrough,* 183 Mich App 163, 165; 454 NW2d 419 (1990).

## VII

Defendant's final argument focuses on the proportionality of his sentence of 3 to 7½ years' imprisonment.

The principle of proportionality requires that a sentence imposed by a trial court be "proportionate to the seriousness of the circumstances surrounding the offense and offender." *People v Milbourn,* 435 Mich 630, 636; 461 NW2d 1 (1990).

Defendant claims that his sentence violates his equal protection and due process rights because the offense is not included in the sentencing guidelines. We disagree. The sentencing guidelines create no substantive rights. *People v Fisher,* 442 Mich 560, 581; 503 NW2d 50 (1993), quoting *People v Potts,* 436 Mich 295, 303; 461 NW2d 647 (1990). They do not even establish presumptive sentences. *Id.* Rather, they are merely a tool to assist sentencing judges in the exercise of their discretion. *Potts, supra* at 303. Judges may depart from the guidelines and need only explain their reasons for doing so. *Id.* at 302. Further, all sentences are subject to appellate review under the proportionality standard. *Id.*

Defendant urges that because his offense is not included in the Michigan guidelines, this Court should look to the federal sentencing guidelines. While sentencing judges are free to consider the federal guidelines in determining proportionality, we decline to adopt a rule requiring them to refer to those guidelines whenever the Michigan guidelines fail to cover the offense at issue. Such a rule would force judges to consider guidelines that apply to roughly similar but not identical federal crimes and that do not reflect the practices of the judges in this state.

Finally, defendant argues that his sentence is not proportionate because he is the victim of selective prosecution under the gambling laws. Selective prosecution claims require proof of intentional

or purposeful discrimination. *Oakland Co Prosecutor, supra* at 331. Defendant has simply failed to sustain his burden of proof on this point.

Affirmed.