# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

KENNETH TAYLOR, JR.,

      Defendant-Appellant.

UNPUBLISHED
February 26, 2015

No.  319066
Ingham Circuit Court
LC No.  12-001103-FC

Before:  RIORDAN, P.J., and MURPHY and BOONSTRA, JJ.

PER CURIAM.

Defendant was convicted of first-degree criminal sexual conduct (CSC I), MCL 750.520b(d)(ii), and unlawful imprisonment, MCL 750.349b(1)(c).  He was sentenced to a term of 25 to 45 years of imprisonment for the CSC I conviction and a term of 9½ to 15 years' imprisonment for the unlawful imprisonment conviction.  Defendant appeals by right.  We affirm.

The victim testified that she was walking in her neighborhood with her Chihuahua around midnight when she tripped and fell, and she then heard defendant's voice from behind her.  The victim stated that defendant picked her up off the ground, grabbed her by the left arm, and proceeded to push her across the street to a location behind a privacy fence.  The victim testified that she screamed "stop" and "leave me alone," but defendant told her that "he had money" and then pulled down her pants and inserted his penis inside her vagina.  She pleaded for him not to ejaculate inside her, but he did so anyway.  When he finished he laughed, walked away, and stated that he did not have any money anyway.  Ultimately, defendant's DNA matched that of sperm obtained during a sexual assault examination of the victim.

According to defendant, he was waiting to meet with a potential customer for a drug deal when he ran into the victim and she offered to perform oral sex in exchange for crack cocaine.  Defendant testified that he agreed and that the two moved across the street to a more private location.  He indicated that they had sexual intercourse, but that he refused to give her the drugs afterward and, as a result, she was very angry and chased after him.

-1-

## I. MRE 404(B)

Before trial, the prosecution notified defendant that it intended to present evidence that he had forcibly raped an escort in 2001, when he was a minor. The prosecution argued that the evidence would be used to show defendant's intent, scheme, and system of committing stranger rape. Defendant objected, claiming that it was irrelevant, unduly prejudicial, and being offered as improper character evidence. The trial court found the evidence admissible to show defendant's plan, scheme, and system of committing sexual assault.

The MRE 404(b) witness testified that in December 2001 she agreed to act as a one-time substitute escort for a bachelor party. She showed up at the address she was given, but a man answered the door and told her that he had not ordered an escort. At that point, defendant called out her stage name and told her that he had ordered the escort, but had to use his cousin's address as a meeting location. The witness said defendant led her into a dark stairwell, grabbed her phone on which she had been attempting to call her boss, threatened her with a knife, pulled down her pants and attempted to insert his penis into her vagina, and told her to give him sex and that he would pay her afterward. He also threatened to kill her and throw her body into a pond. At some point, a roll of duct-tape fell out of his pocket. The witness said she fought defendant for 45 minutes, trying to keep him from penetrating her vagina, and that after scratching his face and twisting his testicles, she was eventually able to flee the stairwell.

Defendant argues that the trial court erred in admitting this evidence. We disagree. With respect to a trial court's ruling regarding the admissibility of evidence, our Supreme Court in *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999), observed:

> The decision whether to admit evidence is within the trial court's discretion; this Court only reverses such decisions where there is an abuse of discretion. However, decisions regarding the admission of evidence frequently involve preliminary questions of law, e.g., whether a rule of evidence or statute precludes admissibility of the evidence. This Court reviews questions of law de novo. Accordingly, when such preliminary questions of law are at issue, it must be borne in mind that it is an abuse of discretion to admit evidence that is inadmissible as a matter of law. [Citations omitted.]

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

The proponent of other-acts evidence must meet three requirements in order to introduce it under MRE 404(b). *People v Sabin*, 463 Mich 43, 55-56; 614 NW2d 888 (2000). The *Sabin* Court elaborated:

First, the prosecutor must offer the other acts evidence under something other than a character to conduct or propensity theory. MRE 404(b). Second, the evidence must be relevant under MRE 402, as enforced through MRE 104(b), to an issue of fact of consequence at trial. Third, under MRE 403, a determination must be made whether the danger of undue prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decisions of this kind under Rule 403. Finally, the trial court, upon request, may provide a limiting instruction under MRE 105. [*Id.* (citations and quotation marks omitted; alteration in original).]

In *Sabin*, the Court explained "that evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *Id.* at 63. However, general similarity between the charged and uncharged acts does not by itself establish a plan, scheme, or system. *Id.* at 64. There must be " 'such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.' " *Id.* at 64-65 (citation and emphasis omitted). Still, unlike evidence of prior misconduct used to prove identity, the common scheme, plan, or system at issue " 'need not be unusual or distinctive; it need only exist to support the inference that the defendant employed that plan in committing the charged offense.' " *Id.* at 65-66 (citation omitted).

Here, there are enough similarities between the assaults to naturally conclude that they were individual manifestations of a common scheme, plan, or system. In both cases, defendant chose a stranger as his victim, ambushed her, grabbed her, shoved her into a secreted location, used violence and physical force to commit the sexual assault that involved actual or attempted vaginal penetration, and made veiled attempts to calm her by stating that he would pay for the sex. Defendant claims that these common features are present in all cases of stranger rape. That assertion is clearly not accurate, minimally in regard to promising payment. See *Sabin*, 463 Mich at 66 ("The charged and uncharged acts contained common features beyond mere commission of acts of sexual abuse."). Moreover, as previously discussed, defendant's common scheme, plan, or system of committing sexual assault need not be distinctive or unique.

Defendant is correct in asserting that there are several differences between the two assaults. For example, defendant planned the 2001 incident in advance, luring the woman to the location of the assault and arriving with duct-tape and a knife. In the current case, it appears that defendant stumbled upon his victim by happenstance. Nonetheless, these two assaults are similar enough to conclude that they are part of a common scheme, plan, or system. Nothing in MRE 404(b) requires that these two instances of sexual assault be entirely similar. The Court in *Sabin* acknowledged that, with respect to its set of facts, "the uncharged and charged acts were [also] dissimilar in many respects." *Sabin*, 463 Mich at 67. The Court then held:

This case thus is one in which reasonable persons could disagree on whether the charged and uncharged acts contained sufficient common features to infer the existence of a common system used by defendant in committing the acts. As we have often observed, the trial court's decision on a close evidentiary

question such as this one ordinarily cannot be an abuse of discretion. We therefore conclude that the trial court did not abuse its discretion in determining, under the circumstances of this case, that the evidence was admissible under this theory of logical relevance. [*Id.* at 67-68 (citations omitted).]

If anything, our case also presents a close call on an evidentiary matter.[1] In terms of the analysis relative to MRE 403, the probative value of the first sexual assault was not substantially outweighed by the danger of unfair prejudice. Defendant argues that evidence of the previous sexual assault was extremely prejudicial due to the heinous nature of the crime. This argument is meritless. As explained above, the similarity between these two assaults is exactly why the evidence was relevant. The central issue in this case is whether defendant engaged in an act of consensual sex for drugs, or committed a violent sexual assault. That defendant committed a substantially similar sexual assault in 2001 is directly relevant to that question. In addition, the heinous nature of the previous assault does not make the evidence unduly prejudicial. All evidence offered by the prosecution is going to be prejudicial and damaging to some extent, but that does not render it inadmissible. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). Considering that defendant is accused of violently raping a stranger, it should be expected that any similar previous sexual assault will be equally heinous and alarming to the jury. The

---

[1] In *Sabin*, the only common features between the charged sexual assault and the MRE 404(b) sexual assault were that the victims were, respectively, the defendant's daughter and his stepdaughter, that they were of "similar age," and that the defendant "played on his daughters' fear of breaking up the family to silence them." *Sabin*, 463 Mich at 66. With respect to the many dissimilarities, the Court stated:

> Defendant's stepdaughter testified that, over the course of seven or eight years beginning when she was in kindergarten, defendant performed oral sex on her three to seven times weekly. The abuse took place at night in her bedroom. She recalled one incident when she was in the fifth grade during which defendant had her lay on her side and he placed his penis between her legs. The charged act in this case, in contrast, was the only time defendant assaulted the complainant. The complainant did not allege prolonged sexual abuse. The incident occurred during a weekday afternoon, not at night while the complainant slept. The sexual act was intercourse, not oral sex. On the basis of this evidence, one could infer that the uncharged and charged acts involved different modes of acting, both in terms of sexual acts and the manner in which defendant allegedly perpetrated the abuse. [*Id.* at 67.]

The case at bar presents greater similarities and less differences between the sexual assaults than those involved in *Sabin*, where the Supreme Court found no abuse of discretion.

probative value of the other-acts evidence was not *substantially* outweighed by the danger of *unfair* prejudice, MRE 403. *Id.* at 75-76. As there was no abuse of discretion, reversal is unwarranted.

## II. CONDUCT OF THE TRIAL COURT

Following his testimony at trial, the trial court asked defendant several questions in the presence of the jury, including but not limited to inquiries about the behavior of the victim's dog, inquiries about why he had not given the victim the drugs after the sexual encounter, inquiries about whether he was concerned about pregnancy, and inquiries about how the site for the sexual encounter was chosen. Defendant now argues that these questions hurt his credibility, thus denying him his constitutional right to a fair trial. We disagree.

To preserve an issue of improper conduct by a presiding judge, a defendant must object in the lower court. *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996). Because defendant failed to object to the trial court's questions, the issue is unpreserved. Unpreserved claims of trial error are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). If the trial court's questioning is found to be improper, this Court should not reverse if the error was harmless. *People v Weathersby*, 204 Mich App 98, 110; 514 NW2d 493 (1994).

In *People v McDonald*, 303 Mich App 424, 437; 844 NW2d 168 (2013), this Court discussed the principles associated with a trial judge engaging in examination of a witness:

> Under MRE 614(b), "[t]he court may interrogate witnesses, whether called by itself or by a party." But the trial court's examination of witnesses may not "pierce the veil of judicial impartiality," because a defendant in a criminal trial has a right to a neutral and detached judge. On review of the challenged inquiries made by the trial court, it is evident that the court was permissibly "question[ing] witnesses in order to clarify testimony or elicit additional relevant information." [Citations omitted.]

A trial court must not invade upon the prosecutor's role, and must ensure that its questions are not intimidating, argumentative, prejudicial, unfair, or partial. *People v Sterling*, 154 Mich App 223, 228; 397 NW2d 182 (1986). The test is whether the trial judge's questions may have unjustifiably aroused suspicion in the mind of the jury as to a witness's credibility, or "quite possibly" could have influenced the jury to the detriment of the defendant's case. *People v Conyers*, 194 Mich App 395, 405; 487 NW2d 787 (1992).

Here, the trial court did not improperly question defendant. Contrary to defendant's assertion, none of the trial court's questions were argumentative, unfair, or prejudicial. First, every question was responsive to defendant's testimony. The trial court elicited a clearer picture of defendant's version of events, asking about his familiarity with the area and how he and the victim supposedly chose the particular location where they had sex. Similarly, the trial court followed up on defendant's claim that the victim was angry about his refusal to hand over the drugs, asking why he chose not to go through with his end of the alleged deal. Defendant takes particular issue with the trial court's questions regarding the victim's dog, claiming that the court

insinuated that he had poisoned the animal. But, even those questions were in response to testimony, as the victim had specifically stated earlier in the trial that ". . . she still seemed just fine, so it makes me wonder if he threw her [the dog] something to eat." The trial court simply did not pierce the veil of judicial impartiality with questions regarding the dog, which questions merely sought clarity and additional relevant information.

Defendant also argues that the sheer number of questions he was asked by the trial court harmed his credibility. However, the trial court asked the victim a similar number of questions during her testimony. The trial court's willingness to explore the victim's testimony, as well as defendant's, established the court as a detached and neutral magistrate. As a result, the court's questions would not have aroused suspicion in the mind of the jury as to defendant's credibility, or influenced the jury to the detriment of defendant's case. Reversal is unwarranted.

### III. SENTENCING

The trial court scored defendant's prior record variables (PRVs) at 60 and his offense variables (OVs) at 65, resulting in a sentencing guidelines range of between 135 and 225 months' imprisonment. Despite the top end of the sentencing guidelines range being 18 years and 9 months, the trial court sentenced defendant to a minimum term of 300 months (25 years) relative to the CSC I conviction, reflecting an upward departure from the guidelines range of 6 years and 3 months. Defendant contends that the trial court abused its discretion in departing from the guidelines, where the departure factors relied on by the court were not objective and verifiable, nor substantial and compelling, and where the extent of the departure was disproportionate. We disagree.

At sentencing, the prosecutor asked the trial court to depart upward from the sentencing guidelines range, arguing:

> I am asking that you actually exceed the guidelines in this particular case. 135 to 225 just simply doesn't . . . cut it. The [L]egislature, when they were proposing these guidelines, didn't think of this kind of case, and I think that the biggest point or reason I can point to is that he has eight high severity felonies as a juvenile, so he maxed out after three . . . felonies as a juvenile. . . .
>
> In addition to that, we have a serial rapist here, and this is . . . stranger rape. . . . Subsequently he has been convicted . . . of armed robbery and carjacking and is already serving a prison sentence. So I think that for all those reasons there are substantial reasons to go above the guidelines. . . . .

The trial court began its sentencing discussion by noting that defendant had a "horrible record." The court then mentioned the psychological and emotional damage that the victim incurred as a result of defendant's actions. The trial court next indicated that there existed substantial and compelling reasons for an upward departure from the guidelines range, mentioning defendant's "past criminality" and the heinousness of his actions. The trial court continued:

You apologize for past mistakes. These are just mistakes. You didn't add a number wrong, sir, *you have a number of felonies*, and it appears to this Court that you are escalating without remorse. This Court has absolute fear of what will happen when you are released.

*In my rationale, I adopt the words of the prosecutor, because they also ring true, for reasons to deviate upward.* You are a threat to society, especially to women, especially to vulnerable citizens. It doesn't appear to me you go after strong people. It appears to me you go after the most vulnerable, and you always will, so I am hopeful that when you get out of prison, because you are young enough where you will get out of prison, that you are at least weakened by it physically, and hopefully mentally stronger so you will not commit any more heinous crimes. [Emphasis added.]

The presentence investigation report (PSIR) reflects that defendant had eight high-severity juvenile adjudications involving home invasions and CSC. See MCL 777.53(2)(a) (defining high-severity juvenile adjudications). The PSIR further indicates that after committing the crimes involved in this case, defendant engaged in conduct that resulted in convictions for multiple motor vehicle misdemeanors, domestic violence, resisting and obstructing a police officer, and, as mentioned by the prosecutor at sentencing, carjacking and armed robbery. It is clear to us that the trial court departed from the guidelines chiefly on the basis of defendant's extensive criminal record and the nature of his crimes, along with the court's concern that defendant posed a real future danger to other vulnerable victims. With respect to defendant's criminal record, we note that the trial court adopted the prosecutor's arguments for a departure, which included the argument that the eight high-severity juvenile adjudications were not adequately addressed by the Legislature in regard to the PRVs.

An abuse of discretion standard applies when an appellate court reviews a determination that there existed substantial and compelling reasons to depart from the guidelines. *People v Hardy*, 494 Mich 430, 438 n 17; 835 NW2d 340 (2013). Whether the extent of the departure is supported by substantial and compelling reasons is also reviewed for an abuse of discretion. *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). "A trial court abuses its discretion if the minimum sentence imposed falls outside the range of principled outcomes." *Id.* The existence or nonexistence of a particular factor relative to a sentencing departure constitutes a factual determination that is reviewed for clear error. *People v Babcock*, 469 Mich 247, 264; 666 NW2d 231 (2003); see also *Smith*, 482 Mich at 300. Reasons given in support of a departure must be objective and verifiable, and "[t]he conclusion that a reason is objective and verifiable is reviewed as a matter of law." *Id.*; see also *Babcock*, 469 Mich at 264.

The analytical framework with respect to sentencing departures was set forth in *Smith*, 482 Mich at 299-300, wherein the Court explained:

Under MCL 769.34(3), a minimum sentence that departs from the sentencing guidelines recommendation requires a substantial and compelling reason articulated on the record. In interpreting this statutory requirement, the Court has concluded that the reasons relied on must be objective and verifiable. They must be of considerable worth in determining the length of the sentence and

should keenly or irresistibly grab the court's attention. Substantial and compelling reasons for departure exist only in exceptional cases. In determining whether a sufficient basis exists to justify a departure, the principle of proportionality defines the standard against which the allegedly substantial and compelling reasons in support of departure are to be assessed. For a departure to be justified, the minimum sentence imposed must be proportionate to the defendant's conduct and prior criminal history.

The trial court may not base a departure "on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight." [MCL 769.34(3)(b).]

PRV 3, MCL 777.53, concerns prior high-severity juvenile adjudications, and the maximum score is 50 points, which was scored here, as to cases in which the offender has three or more prior high-severity juvenile adjudications. There is no dispute that defendant had eight prior high-severity juvenile adjudications. We find no error in the conclusion that, although PRV 3 already takes into consideration prior high-severity juvenile adjudications, the facts of this case establish that PRV 3 does not adequately weigh the severity of defendant's extensive juvenile record. MCL 769.34(3)(b).

Next, with respect to the trial court's fear of the danger that defendant will likely pose in the future, the issue that arises concerns whether this factor is objective and verifiable. "Facts are objective and verifiable when they are actions or occurrences external to the mind and are capable of being confirmed." *People v Portellos*, 298 Mich App 431, 453; 827 NW2d 725 (2012). Objective and verifiable factors that go into determining a defendant's rehabilitative potential can be considered in evaluating whether substantial and compelling reasons exist for a departure. *People v Daniel*, 462 Mich 1, 7 n 8; 609 NW2d 557 (2000). In *People v Horn*, 279 Mich App 31, 44-45; 755 NW2d 212 (2008), this Court stated:

Although a trial court's "belief" that a defendant is a danger to himself and others is not in itself an objective and verifiable reason, *People v Solmonson*, 261 Mich App 657; 683 NW2d 761 (2004), objective and verifiable factors underlying this belief—such as repeated offenses and failures at rehabilitation—constitute an acceptable justification for an upward departure. *Id.* at 671-672. Similarly, in *People v Geno*, 261 Mich App 624, 636-637; 683 NW2d 687 (2004), this Court affirmed the trial court's upward departure from the guidelines range on the basis of the defendant's propensity to commit future sex crimes against children. The Court implicitly agreed that a mere mention of "future risk" would not constitute an objective and verifiable reason justifying an upward departure. *Id.* at 636. However, in reasoning that is equally applicable to the instant case, the Court determined that the trial court's decision was not based on a subjective perception of future risk, but on concrete factors that established a firm probability of future offenses, namely, the defendant's past criminal history, his past failures at rehabilitation, and his admission that he was sexually attracted to children. *Id.*; see, also, *People v Armstrong*, 247 Mich App 423, 425; 636 NW2d 785 (2001).

The teaching of *Solmonson, Geno,* and *Armstrong* is that specific characteristics of an offense and an offender that strongly presage future criminal acts may justify an upward departure from the recommended sentencing range if they are objective and verifiable, and if they are not already adequately contemplated by the guidelines. Although a trial court's mere opinion or speculation about a defendant's general criminal propensity is not, in itself, an objective and verifiable factor, objective and verifiable factors underlying that conclusion or judgment are not categorically excluded as proper reasons for an upward departure. These factors include a history of recidivism, and obsessive or uncontrollable urges to commit certain offenses.

Here, given the statements by the trial court at sentencing, the court clearly came to the conclusion that defendant posed a danger in the future in light of his extensive criminal record ("past criminality" / "you have a number of felonies" / "you are escalating without remorse" / adoption of the prosecutor's statement "we have a serial rapist"). The trial court recognized defendant's history of recidivism and past failures at rehabilitation. Indeed, even after defendant committed the crimes involved here, he proceeded to commit domestic violence, armed robbery, and carjacking. The trial court also correctly observed the heinous nature of the crimes that defendant was committing. There was an acceptable objective and verifiable basis for the trial court's determination that defendant posed a future threat.

In light of the gross inadequacy of PRV 3 to address defendant's extensive and serious juvenile record and considering the future threat posed by defendant, as gleaned from his entire criminal record and the nature of his crimes, we hold that the trial court did not abuse its discretion in finding that substantial and compelling reasons existed to depart from the sentencing guidelines. We also hold that these same reasons supported the extent of the departure; there was no abuse of discretion.

Affirmed.


/s/ Michael J. Riordan
/s/ William B. Murphy
/s/ Mark T. Boonstra